L. & N. R. R. Co., *et al. v.* Eugene Anderson, Admr.

*(Nashville.* December Term, 1928.)

Opinion filed April 13, 1929.

56

John B. Keeble, George T. Hughes, Jr., and A. W. Stockell, for plaintiff in error.

Fleming & Fleming, for defendant in error.

Mr. Justice Swiggart delivered the opinion of the Court.

This action for damages was instituted by Eugene Anderson, administrator, on account of the death of his intestate, James Anderson, who was killed when an automobile in which he was riding was struck by a train at a grade crossing near Columbia. The defendants were the Railroad Company and John Martin, the engineer in charge of the train. There was a verdict for plaintiff in the circuit court, upon which judgment was rendered.

The case was carried to the Court of Appeals, by appeal in the nature of a writ of error, to review the action of the learned trial judge in overruling a motion made

58

by the defendants for a directed verdict in their favor. The Court of Appeals affirmed the circuit court. Petition for *certiorari*, filed by the original defendants, has heretofore been granted, and the case has been argued at the bar of this court. The defendants predicate their asserted right to a directed verdict upon the ground that no evidence was introduced to sustain the averment of plaintiff's declaration that the accident was the result of negligence on their part; and that the plaintiff's intestate was guilty of contributory negligence, proximately contributing to the accident, which barred any right of recovery.

The declaration contains two counts; the first charging that the defendants did not observe the statutory precautions so as to avoid striking the automobile, and the second charging negligence at common law. The Court of Appeals found that there was no material evidence to show a failure to observe the statutory precautions, and since this holding is not attacked by petition for *certiorari*, it is conclusively determined and need not be considered herein. *Brenizer* v. *N., C. & St. L. Ry.*, 156 Tenn., 479, 493-494.

The grade crossing upon which the accident occurred is located just outside the corporate limits of the city of Columbia, near the entrance to a military school. The road crossing the railway at this point was being used as a detour road, carrying the traffic of a much traveled highway, then under reconstruction. The crossing was much used. Approaching the crossing from the west, the direction from which the automobile was coming, the road makes an ascent, beginning about forty feet from the railroad track, and ending within three or four feet from the nearest rail of the railroad. Acts 1899,

chapter 356 (Shannon's Code, sections 1594a1-1594a2), obligates railroad companies "to grade to a level with the rails of said railroad and to keep in repair every public road crossing such railroad for a distance of ten (10) feet on each side of such railroad track and between the rails thereof." *L. & N. Railroad Co.* v. *State,* 137 Tenn., 341.

The second count of the declaration, the common-law count, predicates liability of the defendants upon the failure of the Railroad Company to construct and maintain the crossing as required by the statute, and, in connection therewith, avers that the train was operated at a rate of speed so excessive as to constitute negligence, in view of the proximity of the crossing to a populous community and the great amount of traffic passing over the crossing.

The crossing was protected by an electric device known as a "wigwag signal." This consisted of a large disc, suspended over the roadway, which would swing to and fro from the time an approaching train reached a point 1848 feet from the crossing. The swinging of this signal was also accompanied by the sound of a gong. This device was working at the time of the accident.

It is contended for the defendants that negligence could not be predicated upon the rate of speed of the train, particularly in view of the fact that the crossing was protected by the signal device, and that no causal connection was shown by the evidence between the accident and the failure of the Railroad Company to construct and maintain the crossing in the manner required by the statute of 1899. It is further contended that this statute is inconsistent with the several statutes creating the State

Highway Commission and providing for a system of State Highways, so as to be repealed by implication.

Certain buildings and other structures, located alongside the railroad right of way, were referred to in the declaration and in the evidence as obstructions to the view of the driver and occupants of the automobile. Plaintiff's proof, however, shows that from a point in the road seventy feet west of the railroad track, there was no obstruction to the view of a train at a distance of 350 feet from the crossing; and that when forty-five feet from the track the occupants of the automobile had an unobstructed view of the railroad for a distance of 1060 feet north of the crossing.

At the time of the accident Anderson was riding from Mount Pleasant to Columbia, on the rear seat of an automobile owned and driven by Percy Chandler, an eminent lawyer of Maury County. L. S. Hammond, also a prominent member of the Maury County Bar, was on the first front seat with Mr. Chandler. Anderson lived in Columbia, and, as found by the Court of Appeals, was familiar with the crossing and the conditions there existing. Chandler and Hammond lived at Mount Pleasant. When some distance from the crossing, Anderson called attention to a train on a "Y" track, near the crossing, which he understood to be a passenger train from Mount Pleasant. The nature of his comment was excluded from the evidence. He was, therefore, aware that they were approaching the crossing.

Mr. Hammond, the only survivor of the accident, testified that when the automobile was within twenty to thirty feet of the crossing, he observed the "wigwag signal" in motion. He thought the signal was being operated by the train above mentioned, which was south of the crossing.

He testified that the automobile, a Ford, was being operated up the incline in low gear, and was making an unusual amount of noise, even for an automobile of that type. He, therefore, did not hear the approach of the train from the north. He testified that the automobile proceeded slowly and without stopping, and without a suggestion of any kind from Anderson; that the low speed resulted in the automobile being on the crossing an appreciable length of time. The automobile had almost cleared the track when it was struck; another twelve inches would have avoided the accident. Mr. Hammond testified that he did not see the train until just before it struck the automobile. His statement that he had to look back to his left to see the engine indicates that the front part of the automobile had cleared the track before he was aware of the impending danger. Up to this time the speed of the automobile had not been changed, and the driver had done nothing to indicate that he was aware of the approaching train. Mr. Hammond testified that he did not know whether Chandler ever saw the train or not.

There is no material conflict in the evidence as to any of the facts. As stated by the Court of Appeals, the question of whether the deceased was guilty of proximate contributory negligence, so as to require a verdict for the defendants, depends for its determination mainly upon the inferences to be drawn from undisputed facts; and a directed verdict would have been improper unless the only fair and reasonable inference from such undisputed facts is that the deceased was guilty of such contributory negligence. *Roofing & Mfg. Co.* v. *Black*, 129 Tenn. (2 Thomp.), 30, 37.

The testimony of the engineer, one of the defendants, is that he was operating his train at a speed of fifty miles an hour. He saw the approaching automobile when it was about sixty feet from the track and the train about 360 feet from the crossing. He immediately sounded the alarm whistle and put on the emergency brakes, bringing the train to a stop within 715 feet, which the proof shows to have been a good stop, with the brakes in good order.

There is no contradiction of this testimony of the engineer, and it is in accord with the other evidence. If the train moved 360 feet at a speed of fifty miles an hour, then the automobile, moving sixty feet in the same length of time, was moving only one-sixth as fast as the train, or at the rate of eight or nine miles an hour. This is in accord with the testimony of Mr. Hammond that the automobile approached the track slowly, with its engine laboring on account of the ascent in the road. According to the uncontroverted testimony, therefore, the train was in full view of the occupants of the slowly moving automobile from the time they were within sixty feet of the crossing.

It seems unnecessary, in view of this evidence, to speculate whether Anderson, on the rear seat of the automobile, could have seen the wigwag signal. He is shown to have been aware that they were approaching the railroad, for he had commented on the train on the "Y" track. He must also have been conscious of the fact that Mr. Chandler was approaching the crossing without stopping, in violation of Acts 1917, chapter 36, which makes it the duty of the driver of an automobile to come to a full stop at a distance of not less than ten feet nor more than fifty feet from a grade crossing.

■ This was an act of "gross negligence" on the part of the driver (*Tennessee Cent. Ry. Co.* v. *Page,* 153 Tenn., 84, 95), and while this negligence may not be imputed to Anderson (*Crawford* v. *N., C. & St. L. Ry.,* 153 Tenn., 642), it should have at least caused him to be more alert for his own safety. *Knoxville Ry. & Light Company* v. *Vangilder,* 132 Tenn., 487, 498. It seems obvious that if Mr. Chandler had observed the statute and had looked up the track, he would have seen the train, which was in plain sight, and the accident would have been avoided.

The automobile was a Ford sedan, and there is nothing in the evidence to suggest that Anderson, on the rear seat, did not have as full a view of the track as the occupants of the front seat.

It affirmatively appears from the testimony of Mr. Hammond that Anderson made no suggestion of any kind to the driver at any time; and it also affirmatively appears from his testimony that the driver had given no indication that he was aware of the approach of the train.

In view of the fact that the automobile had almost cleared the crossing when it was struck, and, to quote the brief of the administrator, "one more revolution of the wheels, would have avoided the collision," it seems obvious that an admonition from Anderson, even after the automobile was on the track, would have caused the driver to increase the speed sufficiently to escape the accident. Such an admonition before the automobile reached the track would certainly have resulted in the driver bringing the car to a stop, to let the train pass.

■ In these circumstances, we think our cases compel the conclusion that Anderson was guilty of negligence as a matter of law in not discovering the peril and advising the driver thereof, in time to avoid the accident. The

controlling principles are summarized in *Dedman* v. *Dedman,* 155 Tenn., 241, 246:

"One riding in an automobile as a guest cannot rely upon the care and negligence (misprint for "vigilance") of the driver to the extent of relieving himself from the exercise of reasonable precautions for his own safety. This obligation is personal and continuing. *Stem* v. *Interurban Ry.,* 142 Tenn., 494. A guest, although not driving the car, must exercise due care for his own safety. *Hurt* v. *Y. & M. V. R. Co.,* 140 Tenn., 623. If an adult, while riding in a car driven by another sees, or ought by due diligence to see, that the driver is not taking proper precautions, it is the duty of the passenger or guest to remonstrate or give some warning of danger, and a failure to do so is negligence. *Knoxville Railway & Light Co.* v. *Vangilder,* 132 Tenn. 489. To the same effect is *Tennessee Central R. Co.* v. *Van Hoy,* 143 Tenn., 312.

"It is said in *Knoxville Railway & Light Co.* v. *Vangilder, supra,* that the passenger or guest may rely upon the assumption that the driver of the automobile will exercise proper care and caution unless the danger is obvious or is known to the passenger or guest. This is repeated in *Tennessee Central R. Co.* v. *Van Hoy, supra.*"

The duty of the guest to admonish or advise the driver is recognized in the foregoing quotation, whenever the danger is such that the guest sees it, or "ought by due diligence to see it;" and the right of the guest to rely upon the assumption that the driver will exercise proper care and caution is denied when "the danger is obvious" or is known. In *Dedman* v. *Dedman* the alleged contributory negligence of the guest or passenger in the

automobile, which was being driven at an unlawful rate of speed and thus caused an accident, was held for the jury, because of the circumstances proven which, in the opinion of reasonable men, might have justified the guest in not observing the speed at which the automobile was being driven. The court expressly distinguished the case from railroad crossing cases, in which the crossing and the approaching train are as apparent to the guest as to the driver, with an equal opportunity for the guest to observe the danger.

In *Steele* v. *L. & N. R. R. Co.,* 154 Tenn., 208, there was a directed verdict for the defendant. In affirming the judgment of the circuit court this court said:

"The undisputed facts show that the death of plaintiff's intestate was the direct result of the negligence and lack of care on the part of the occupants of the car. Either of them could have seen the train at a point from twenty to fifty feet from the crossing at a distance of three hundred yards down the track, and could have heard it approaching if they had exercised ordinary care for their own safety."

In *Stem* v. *Interurban Ry.,* 142 Tenn., 494, 508-509, with regard to the contributory negligence of a guest in an automobile which was struck by an interurban car at a grade crossing, this court said: "To look and listen for cars at crossings is a positive, fixed duty, when by such precautions they may be seen or heard, and in such cases a failure of observance will bar recovery." The proof showing that the guest who sustained injury was exercising no care to ascertain the existence of the crossing or the approach of the car, this court held that the case should have been submitted to the jury only because of evidence which tended to show that obstructions

along the road would have prevented the guest from ascertaining the danger if she had looked and listened. The question which was held for the jury was whether the conditions were such as to excuse the guest's failure to discover the danger and warn the driver.

The undisputed evidence shows that Anderson, on the rear seat of the sedan, could have seen the approaching train in time to warn the driver and avoid the accident. Either he did see the train and failed to utter any warning, or else he did not look up the track as he was being carried to the crossing, and thus failed to discover what would have been obvious if he had looked. In either event, he was guilty of a failure to take reasonable precautions for his own safety, which failure undoubtedly contributed proximately to the accident.

The Court of Appeals was of the opinion that the difference between the situation of the driver and that of the guest on the rear seat was such as to support and justify the action of the trial judge in overruling the motion for a directed verdict. That there is a difference in the situation of the driver and guest on the rear seat in many cases of accident is apparent, but in the case before us no such difference exists as to convict the one of negligence and relieve the other. Their view of the track was the same for a distance of at least forty feet from the crossing, and the margin of time and space between the collision and safety is shown to have been so slight that a discovery of the peril up to the very time the automobile entered the crossing would undoubtedly have prevented the accident.

It is argued for the administrator that since Mr. Hammond testified that he was watching the train on the "Y" track, south of the crossing, when the automobile was

driven across the track, it is a reasonable inference that Anderson, who had previously called Hammond's attention to that train, was also watching it, and in that way had his attention diverted. If such inference can be made, we do not think it could be urged as an excuse for Anderson's failure to look at the track in the other direction. The train which Hammond was watching was not on the track which crossed the road, nor does it appear that it was going in the direction of the crossing. At least, there is no evidence to suggest that the occupants of the car had reason to apprehend danger from that source. Anderson is shown to have been aware that the automobile was approaching a railroad crossing. There was no emergency which compelled his attention elsewhere, and nothing is shown which could excuse him from his fixed duty to look and listen before he permitted himself to be carried across the track.

In *Hurt* v. *Y. & M. V. R. Co.*, 140 Tenn., 623, 646, after citing a number of cases, this court said: "Our cases cited above recognize that a railroad is an admonition of danger, and that ordinarily it is negligence *per se* to enter upon it without looking and listening." The court held in that case that it was a question for the jury whether the driver of an automobile was guilty of contributory negligence, so as to bar a recovery, in permitting his absorption in other matters to cause him not to realize that he was about to cross a railroad track. It is, however, quite a different thing to say that a person, aware that he is about to cross a railroad track, permitted himself to become absorbed in watching an object on his right side, and thus failed to look to his left and observe an approaching train.

Assuming, without deciding, that the Court of Appeals correctly found in the record evidence of negligence on the part of the defendants, in the condition of the crossing and the speed at which the train approached the crossing, we see no escape from the conclusion that Anderson was also guilty of negligence in failing to notice the obvious danger and warn the driver, and that the accident was the result of the concurring negligence of the defendants, the driver of the automobile and Anderson, and that the motion for a directed verdict should have been sustained.

Judgment will be entered here accordingly.