CINCINNATI, N. O. & T. P. RY. CO. v. GARRETT.—154 S. W. (2d), 435.

Eastern Section. July 8, 1941.

Petition for Certiorari denied by Supreme Court, October 4, 1941.

D. O. Harris and R. L. Tindall, both of Harriman, for plaintiff in error.

Jeffers & Jeffers, of Oneida, and Pope & Pope, of Knoxville, for defendant in error.

PORTRUM, J. This action was brought by the widow, Mrs. Emma L. Garrett, administratrix of the estate of her deceased husband, David Garrett, for damages in the sum of $2,999 which she claims is due her for the wrongful death of her husband on November 23, 1939, against the defendant Railway Company, her declaration contains two counts; the first being a common law count and the second a statutory count based upon the failure of the railway to perform the statutory requirements.

The common law allegations as contained in the first count are these:

"She states that at Winfield, in Scott County, Tennessee, there was maintained by defendant on the occasion of his wrongful death, a public road crossing at grade and the tracks of this defendant, Railway Company, cross said county highway at an oblique angle, and that just beyond said public road crossing, the tracks of this defendant made an abrupt turn and to the public approaching said grade crossing from the west side towards the east side of said tracks, as her decedent was doing when killed by defendant's train, defendant had wrongfully caused or permitted, suffered and allowed large stacks of lumber to be stacked along said right-of-way, so that said obstruction cut off the view of those who approached said railroad track on said grade crossing from west to east and the trains could not be seen, for that reason, until the public were almost on the crossing itself and the train would be so close to said road crossing as to make it extremely dangerous and hazardous to the public. In fact, said obstruction presented and made it a 'blind crossing' for those who approached it from the west to east, and the defendant owed to decedent the duty to take extra precautions in operating its trains

over said crossing and to give timely warning with steam whistle or bell on said engine or by some other device as said trains approached said public road crossing, and all of which defendant on this occasion failed and neglected to do, and as her decedent came upon said crossing in his automobile from the west side of said track going to the east side thereof, without any notice or warning of said engine and train, as it proceeded southward his automobile was hit, struck and hurled into the air a distance of many feet, thereby and as a direct result thereof, so crushed, mangled and broke his limbs, body, head and chest, as that he presently died therefrom and as a direct result thereof.

". . . That said train of the defendant was being operated at an exceedingly high and dangerous rate of speed of more than 60 miles per hour, and those in charge of said train on said occasion were not keeping any effective or other lookout ahead for obstructions upon said track at said public road crossing, as was their duty, and all of which negligence, and careless acts in operation of said south bound train, commingling and cooperating the one with the other, was the direct, prime, and proximate cause of the collision of said agent and train with the automobile of her decedent and his subsequent death, but for which same would not have happened. . . ."

The second count of the declaration was grounded upon the railroad precaution statute, Code, Section 2628, subsections 1, 2, and 4, subsections 1 and 2 having reference to grade crossings, requiring a whistle or ringing of a bell to give warning of the approach of the train. Subsection 1 reads as follows: "The overseers of every public road crossed by a railroad shall place at each crossing a sign, marked as provided by section 2659, below; and the county court shall appropriate money to defray the expenses of said signs; and no engine driver shall be compelled to blow the whistle or ring the bell at any crossing, unless it is so designated."

The fourth subsection requires "lookout ahead; alarm whistle to be sounded, and all means employed to stop train, when" an obstruction appears upon the track ahead.

The statutory count of the declaration was abandoned in the lower court upon the trial of the case, and could be ignored but for the fact that the Railway Company, having proved that this public crossing had not been marked as provided by the statute and as a consequence "no engine driver shall be compelled to blow the whistle or ring the bell at any crossing, unless it is so designated." The company relies upon this provision of the statute as a defense to the common law count since it is relieved by statute of the duty to give warning of the approach of a train to a crossing where the public road is not so designated as required by statute.

The plaintiff must always plead a statutory provision to rely upon the statutory remedy. Why then should not the defendant be

required to plead the statutory exemptions in order to rely upon them? Especially when the plaintiff having plead the statute and then abandoned it, leaving only the common law count. Defendant plead the general issue of not guilty.

The statute above quoted is a reenactment by the Code of 1932 of a statute, chapter 94 of the Acts of 1855-56, and said chapter had been repealed by implication by chapter 133 of the Acts of 1923, but as stated the Code of 1932 restored chapter 94 as modified by chapter 133, 1923, making apropos the construction given the Acts 1855-56, chapter 94, by the courts prior to the modification made in 1923 by chapter 133. Southern Railway Co. v. Whaley, 170 Tenn., 668, 98 S. W. (2d), 1061. Prior to the said modification, the courts had construed the statute and held where the public road was not designated by the county officials as required by statute the active statutory precautions were not applicable, and the statute expressly relieves the driver from blowing the whistle or ringing the bell at any crossing not so designated. Graves v. Illinois Cent. Railroad Co., 126 Tenn., 148, 148 S. W., 239; Middle Tennessee Railroad Co. v. McMillan, 134 Tenn., 490, 494, 184 S. W., 20; Hurt v. Yazoo & M. V. Railroad, 140 Tenn., 623, 636, 205 S. W. 437; Steele v. Louisville & N. Railroad Co., 154 Tenn., 208, 285 S. W., 582, 583.

In the Steele case, supra, in construing the statute the court said: "In many counties of the state there was no overseer to erect the crossing signs required by statute, in the absence of which no locomotive engineer owed any duty, *not even under the common law* [italics supplied], to sound the whistle or bell to warn those near road crossing of the approaching train."

The courts having held that subsections 1 and 2 being in derogation of the common law, the statute repealed the common law, and abolished the common law duty to give warning to the approach of the train to the crossing, the sole duties required being those defined by the statute. Graves v. Illinois Cent. R. Co., supra; Whittaker v. Louisville & N. Railroad Co., 132 Tenn., 576, 179 S. W., 140; Hurt v. Yazoo & M. V. Railroad Co., 140 Tenn., 623, 205 S. W., 437; Stem v. Nashville Interurban Railway, 142 Tenn., 494, 221 S. W., 192.

Upon these constructions of the statute, defendant relied upon an absolute exemption afforded it under the provision of the statute from blowing the whistle or ringing the bell at undesignated grade crossings under any and all circumstances. That the statute having abrogated the common law, then the remedy is confined solely to the statutory remedy. This contention has been the burden of the brief and argument in this case of both the parties, one asserting the position and the other denying it.

This court construes this statute giving immunity in certain instances to the defendant as not a license to commit other acts of common law negligence, and in the absence of other acts of common

law negligence it is not negligence on the part of the Railway Company to run over an unmarked public grade crossing without giving warning of the approach by ringing the bell or blowing the whistle. To illustrate: The plaintiff must show an act of proximate negligence upon the defendant before she can recover; it is not negligence for the company to operate its train over its tracks, but if she establishes that the grade crossing statute was not complied with, she has shown negligence entitling her to recover if proximate. But if she fails to establish that the public road crossing was designated as provided by the statute, then she failed in this instance to show negligence entitling her to recover. However, if she goes further and establishes that the Railway Company has committed other common law acts of negligence which are proximate and which require a warning to protect the public against these other common law negligent acts, then it is incumbent upon the company to give the warning by ringing the bell or blowing the whistle, and the statute does not exempt the company from this additional warning. This is the construction given the statute in the case of Stem v. Nashville Interurban Railway, supra. The court reviewing the case of Graves v. Illinois Cent. Railroad Co., supra, upon this point said: "In the opinion it is nowhere intimated that other or different negligence than that of a failure to give statutory notice of the approach of cars at crossings may not exist under given circumstances. This has been repeatedly held. See [Louisville & N.] Railroad [Co.] v. Milam, 77 Tenn. (9 Lea), 223-226; Chattanooga Rapid Transit Co. v. Walton, 105 Tenn., 415-427, 58 S. W., 737; . . ." 142 Tenn., 507, 221, S. W., 196.

In that case the train was operated at an excessive and dangerous rate of speed over an exceedingly dangerous crossing which required the warning, that the crossing was not marked and the ordinary crossing warning was not required under the statute. And where the railroad had installed an automatic bell warning at the crossing, it is liable for common law negligence in failing to keep the bell inspected and in working order and the statute affords no protection against the duty to inspect. Southern Ry. Co. v. Penley, 175 Tenn., 380, 134 S. W. (2d), 177. And in the case of Gaines v. Tennessee Central Ry. Co., 175 Tenn., 389, 390, 135 S. W. (2d), 441, that the railroad was negligent in maintenance and inspection of automatic signal device at crossings. We think the decisions clearly establish the duty of the Railway Company to give warning of the approach of its trains at grade crossing, marked or unmarked, where they are rendered extra hazardous by other common law acts of negligence on the part of the Railway Company. Therefore, the common law count was not demurrable but stated an appropriate common law action.

We now come to the question of any evidence to support the verdict. There is sufficient conflict in the evidence to carry the case

to the jury upon the Railway Company's negligence in creating an extra hazard by stacking or permitting the stacking of lumber so near its track and the crossing as to obscure the view and to require an additional warning as a protection against the obstruction upon which to submit the question to the jury. The view was not entirely obstructed for there was a space of 10 to 15 feet from which the deceased could see the approaching train and could have stopped his car before entering upon the track; and if there was no train in sight, the view was of sufficient length to permit him to pass over the track in safety. The deceased was a traveling salesman covering this territory regularly and familiar with the crossing and the surroundings. He knew of the danger, but notwithstanding this drove his automobile slowly over this 10- or 15-foot space, affording him a view of the approaching train, and without looking or attempting to stop he drove immediately upon the track in front of the fast approaching train at a time when nothing could be done to protect him. Was he guilty of such contributory negligence as bars the common law action?

At this point the highway crosses the main lines of the Railway Company, which is double tracked with two side tracks, making it necessary to cross four lines of tracks. The west or south bound track upon which the deceased was killed was the first track, so designated by us; the second track was a siding, and the third, the north bound track, and the fourth another siding. There were islands of safety between these tracks. The view at the crossing was obstructed both to the north and to the south and the crossing was in a dip so that trains approach the crossing down grade from each direction. This was a much used crossing, but the deceased was familiar with the lay of the land and that the company operated its fast trains over this track. He knew of the care required in entering upon the tracks to guard against the danger for his protection. The plaintiff introduced an eye witness to this accident and has reduced his testimony to a narrative form which is clear and illuminative. We use this narration as a fair reflection of what transpired:

"My name is Joe Stanley. I live about one-fourth mile from the crossing where Mr. Garrett was killed. I farm and work some for the Government. I knew David Garrett, I saw him the morning he was killed. I was on the porch at the post office. (This post office was directly west of the place of accident, on higher ground.) I saw the train strike this man's car. I saw the train coming in. I heard a whistle blow, which I took for the crossing. I could not see the train at that time and did not see it until immediately before it hit the car. At the time I first heard it blow the train had not come in sight. It blew next immediately before it hit the car. I don't think it was more than two or three seconds from the time I heard it blow the next time till it hit the car.

"I do not recall its blowing any more from the time it first blew for the crossing before it came in sight, until just before it struck the car.

"My hearing is pretty fair and the front wheels of the automobile were across the rails on the north side when he blew the last blast. It knocked the car about 15 feet where it struck a water column. The car was badly torn up. He was dead when I got to the car. It was pretty long train. I have been taught this crossing is in a dip each way and in my judgment the train was running 60 miles per hour when it struck his car.

"The train did not check its speed one bit in the world before it struck this car. I never recognized any bell ringing. Mr. Garrett was traveling very slow. I have lived on the west side of this crossing 10 or 12 years and it has during that time been much used by the public. Around the noon hour the school children drift around and use it going to lunch, pretty numerous. The school where they attended is about 300 yards west of the crossing and in—would say that in 24 hours including all vehicles, 175 persons use this crossing in 24 hours.

"Traveling towards the east as Mr. Garrett was doing from the north I am pretty sure you would have to be in 15 feet of the tracks before you could see the train coming. There is a curve there, and an embankment five or six feet and then lumber stacks close to the side of the little cut which would prevent one from seeing until he got close to the railroad. One stack was 10 to 12 feet and the other must have been 16 feet high, they were 10 to 12 feet from each other and were 12 to 15 feet from the south bound main.

"They were about 20 feet from the road Garrett was traveling. There is a garage above the railroad right of way but a water tank on the right of way, and owing to a curve you would have to have your automobile on the middle track before you could see a train coming from the south around this curve. There are three section houses south and west of the crossing.

"And to see a train coming from the north the way he was traveling, he would have to be in 15 feet of the track to see the train.

"When I heard the danger signals, he must have been in 8 feet of the track. He never came to a full stop until his front wheel went over the first rail and I thought I recognized a stop just as the front wheels came nearly in contact with the second rail. He just rolled on and I did not discern any check. I was about 60 yards from him.

"With his back to me, could not see his hands and I don't know if he made any effort to stop or not. I could not see in what direction he was looking."

 This evidence is not in conflict with any other. It is the plaintiff's evidence, and it becomes a question of law for the court to determine if the deceased was guilty of contributory negligence,

barring his right to recover. He was absorbed in thought apparently, and took no precautions whatever for his own safety; he left an island of safety and drove upon the track immediately in front of a fast approaching train, without looking or attempting to stop before he entered upon the track, seemingly unaware of his danger. What facts are there to excuse him from this negligent conduct, making the question of his contributory negligence one for the jury? His absorption in thought cannot excuse him, since it was not involuntarily induced by circumstances over which he had no control. He was driving slowly and could have stopped, or at least attempted to stop before entering upon the track after his vision of the approaching train became unobstructed. It is negligence for one to rely absolutely upon a warning given by the approaching train as a means of protection when entering upon a track, and if he relied upon the absence of a warning without using his faculty of sight and of due caution before entering upon the track, he was negligent, notwithstanding no warning was given. It is argued that he first looked to the south to see if the train was approaching from that direction and when he looked to the north that it was too late. The plaintiff's witness says he did not appear to look in either direction, but assuming that he did look first to the south, this was a negligent act. His view was obstructed to the south until he had passed over the south bound track and had entered upon the siding between the south and north bound tracks, and he was in no immediate danger from a train traveling north, since he had to pass over the south bound track and the siding before coming into the sweep of the track going north. The deceased was familiar with this condition, and knew that his immediate attention should be directed to the north as the train traveling south upon the track he was first to enter. The crossing may be called a blind crossing, especially to a stranger, for it was an obstructed crossing, but he was afforded an island of safety before entering upon the track and he was traveling at such a low speed he could have availed himself of it if he had only looked. The court is of the opinion from the undisputed facts that he was guilty of such contributory negligence as bars the common law right of recovery.

The rule is stated in the case of Hurt v. Yazoo & M. V. R. Co., 140 Tenn., 623-642, 205 S. W., 437, 442, as follows: ". . . The rule that it is negligence per se to enter upon a railroad track without looking or listening has been applied to the ordinary case in which the plaintiff, or the deceased, was not prevented from seeing or hearing by any other circumstances, and had the use of his faculties. In such case an ordinary prudent man is deemed, under the law, to be guilty of such negligence as would bar a recovery if he entered upon the track without doing so. And it is only in exceptional cases that the rule does not apply, and in cases in which

the facts relied upon as creating the exception itself are not super-induced by the want of due care. But what is due care in the circumstances of the exception is ordinarily a question for the jury."

We have pointed out that the facts do not make this an exceptional case, for "if he had seen the track, or if his reasons for not seeing it were superinduced by a want of due care, he could not recover." Hurt v. Yazoo & M. V. R. Co., supra. This rule has been approved and stated in many subsequent cases. See Klein v. Illinois Cent. R. Co., 4 Tenn. App., 563, 564; Nashville, C. & St. L. Ry. v. Perry, 13 Tenn. App., 268; Louisville & N. R. R. Co. v. Anderson, 159 Tenn., 55, 15 S. W. (2d), 753; and Southern Ry. Co. v. Whaley, 170 Tenn., 668, 98 S. W. (2d), 1061, where it is held, a person entering upon a railroad track without looking or listening is guilty of such gross contributory negligence as will preclude him from recovering under the last clear chance doctrine for injuries when struck by a train. And this was a 13-year-old child; the duty to look and listen is greater upon an adult than upon a child.

In this case the failure of the deceased to look and listen and guard himself against danger was his absorption in thought, and there was no circumstance superinducing this absorption over which the deceased had no control. That is, there are no facts in the record justifying an inference to account for his absorption. In the absence of facts bringing the case within the exception to the general rule, then it is negligent as a matter of law for a person to enter upon a track without looking or listening. The trial court should have directed a verdict, and the verdict is now directed and the suit ordered dismissed with costs.

McAmis and Ailor, JJ., concur.