# NASHVILLE, C. & ST. L. RY. CO. v. SKELTON. No. 3. —173 S. W. (2d) 948.

Eastern Section. April 10, 1943.

Petition for Certiorari denied by Supreme Court, July 3, 1943.

Walton Whitwell, of Nashville, and W. D. Spears, of Chattanooga, for plaintiff in error.

Harry Berke and Martin A. Fleming, Jr., both of Chattanooga, for defendant in error.

McAMIS, J. This is an action to recover for the death of Oscar L. Payne, who was killed while operating a dinkey engine within the plant property of Tennessee Products Company in Chattanooga. His death occurred on September 8, 1941, as the result of a collision between Payne's engine and a locomotive of the defendant below, N. C. & St. L. Railway Co., engaged in a switching operation upon a line owned by the Tennessee Products Company and located within its plant property.

The case was tried before the court and a jury and, at the conclusion of all the evidence, defendant moved the court for a directed verdict in its favor. Its motion was overruled and the case submitted to the jury with the result that plaintiff obtained a verdict for $25,000. At the hearing of defendant's motion for a new trial the trial judge suggested a remittitur of $8,500, which was accepted under protest by the plaintiff. The motion for a new trial was overruled and both parties have appealed in error to this court. Plaintiff insists that the trial court

erred in suggesting a remittitur and the defendant that it was error to allow the case to go to the jury (a) because of the proximate contributory negligence of the deceased and (b) because the evidence failed to establish negligence in the operation of its locomotive.

The declaration charges three specific acts of negligence:

(1) That the defendant failed to maintain a proper lookout, (2) failed to give warning or to give a sufficient warning of the movements of its engine and cars, and (3) that the engineer operating defendant's engine propelling its cars negligently failed to put down the brakes and otherwise take the necessary steps to stop the train.

In response to a motion filed by the plaintiff defendant plead specially (1) that defendant was guilty of no negligence directly or proximately contributing to the cause of the death of plaintiff's intestate, (2) that the proximate cause of the injury and death of plaintiff's intestate was his own negligence in operating his locomotive in a backward movement in an easterly direction while looking to the west and (3) that such negligence of plaintiff's intestate directly or proximately contributed to the cause of his injury and death.

The Tennessee Products Corporation has, for many years, owned and operated a large manufacturing plant wherein it manufactures coke, gas, nitrates and other products. Within the plant are some fifteen or more tracks running in different directions and to different points within the plant to facilitate the shifting of cars from one point to another and, finally, to place them on a lead track going out of the plant and connecting with a main track of the defendant.

The lead track, it appears, runs in a general westerly direction as it leaves the plant. From it various spur tracks numbered from eight to fifteen, inclusive, branch off to the left and each forms a left curve. Each of these tracks is provided with a hand operated switch at the point of intersection with the lead track. They all run approximately due west from the respective switches.

On the day of the accident, September 8, 1941, defendant's engine entered the plant on the lead track after the dinkey had gone out spur track twelve in a forward motion for the purpose of connecting with and returning three or four cars. After picking up some thirteen cars, twelve of which were empties, defendant's engine, operating backward, was engaged in switching said cars upon the lead track preparatory to leaving the plant. J. D. Hamilton, the train foreman, had gone forward to the switch for spur track twelve for the purpose of lining the switch there. According to defendant's proof the switchman Creighton was on the lead car as a lookout and another switchman McCulloch was placed somewhere between Creighton and the engine for the purpose of relaying signals to the engineer as he rounded a curve leading to switch twelve.

Hamilton testified that after lining the switch at twelve for defendant's outgoing train he saw smoke rising from the dinkey proceeding east on track twelve and, fearing that it might not stop, ran to a point where he would be in position to signal the engineer of the dinkey to stop. He says when the dinkey came in sight from behind some parked box cars on track eleven just south of track twelve he gave to the engineer of the dinkey the emergency stop signal but that he was looking in the opposite direction and did not see the signal. Hamilton says he

then signalled to Creighton who was on the lookout for defendant's train giving him the emergency stop signal. Creighton says he immediately relayed the signal to McCulloch who says it was in turn relayed to the engineer and the brakes of defendant's locomotive immediately applied.

Plaintiff's witness, Hannah, was riding on the front end of the dinkey standing on the footboard as it approached switch twelve. He says he jumped off as the dinkey approached that point, ran over on track fourteen north of track twelve and, from that point, saw the approaching train on the lead line. He says he immediately gave the deceased the emergency stop signal and that deceased applied his brakes but was unable to bring his engine to a stop before reaching the switch. It is undisputed that the collision occurred at or near switch twelve and plaintiff's proof shows that deceased's engine had practically come to a stop. The lead car of defendant's train travelled some fifty feet or more beyond the point of collision.

We think there is some evidence from which the jury might have concluded that defendant's train was being negligently operated. There is proof that no signal was sounded near the point of collision and the jury might have concluded that Hamilton was negligent in not signaling to Creighton immediately to stop defendant's train instead of running forward to attempt to give a signal to the dinkey. In explanation of this action Hamilton testified that his intention was to avoid stopping defendant's train if possible. The jury could have found from the evidence that if Hamilton had given the signal to Creighton as soon as he saw the approach of the dinkey defendant's train might have been brought to a stop

before reaching the point of collision. The proof shows that neither train, according to custom and understanding, had the right of way and it was as much the duty of defendant to stop its train as it was the duty of deceased to stop.

■ Was the deceased in the exercise of proper care and caution for his own safety? We have already referred to the prevailing custom or understanding that each switching crew, in operations within the plant, was to look out for itself. Neither had the right of way over the other. Mr. Payne had been operating the dinkey for several years and must be presumed to have known of this custom and to have known that defendant sent its switch engine within the plant once or twice daily at any and all hours of the day for the purpose of picking up cars. Yet, there is no insistence that deceased gave any warning of his approach by sounding the whistle. Plaintiff's witness, Hannah, moreover, says when he looked down the lead track after stepping off the footboard and saw defendant's train approaching the deceased was looking west. Hamilton says he was never able to give deceased the stop signal because he was not looking in that direction but was looking west at the time. We think this proof establishes the fact that deceased was not looking in the direction in which he was traveling despite Hannah's testimony that he does not know that deceased did not look at some other time. If he had looked sooner he could have seen the approaching train sooner, and the presumption is that he would have applied his brakes before receiving the signal from Hannah. If he had looked before coming out from behind the parked box cars, it would have been to no avail because defendant's train could not have been seen until he

emerged from behind them. If he looked after he got the signal from Hannah, his doing so would furnish no excuse for having failed to look sooner and at a time when looking would have been effective.

It is argued in behalf of plaintiff that Hannah could see defendant's train sooner than deceased. We are unable to follow this argument. Hannah was on the opposite end of the dinkey, some twenty-seven feet further away from the lead track when he jumped off. The dinkey was moving toward the lead track continuously and must have been traveling as fast as Hannah after he alighted.

An attempt is made to show that Hamilton was not present at or near switch twelve as he testified. However, one of plaintiff's witnesses says he saw him there and there is no proof to the contrary except that some of the witnesses say they did not see him there. These witnesses were on the opposite side of the lead track and their view was more or less obstructed by the intervention of defendant's train. But if Hamilton's testimony be eliminated, Hannah's testimony that deceased was not looking still remains and we do not think the jury could have found, under the evidence, that deceased was looking as he approached the point of collision. In failing to look, we think he was guilty of proximate contributory negligence which furnished a concurring cause of the collision. It was his duty to anticipate the presence of defendant's train at any time on the lead track and keep his engine under such control that he could bring it to a stop after reaching a point from which he could see the lead line. We cannot escape the conclusion that if he had been looking he could have brought his engine to a stop and avoided the collision. As it was, after learning

second hand from Hannah of the presence of defendant's train, he was able to bring his engine almost to a stop before reaching the switch.

As has been seen, plaintiff charges defendant with failure to sound a warning signal, failure to apply the brakes and bring its train to a stop in time to avoid the collision, and failure to maintain a lookout. According to the undisputed evidence plaintiff's intestate did none of these things. Their duties were equal and reciprocal and we are unable to say that defendant should be held responsible for the violation of its duties while plaintiff's intestate is not.

We think the principle of our cases defining the duties of one approaching a railroad crossing and holding that failure to look before entering upon the track constitutes contributory negligence has application here as much as if deceased had been a pedestrian or the operator of an automobile. Indeed, the fact that he was operating a locomotive requiring considerable distance to bring it to a stop might impose a duty of even greater precaution.

"It is a well-settled rule of law that a railroad track is an admonition of danger, and that it is an act of negligence for a person to go upon such track without looking or listening." Railroad Co. v. Satterwhite, 112 Tenn. 185, 79 S. W. 106, 110.

In Chattanooga Station Co. v. Harper, 138 Tenn. 562, 580, 199 S. W. 394, 398, the Court, speaking through Chief Justice Neil, said:

"On the other hand, it was the duty of the defendant in error, occupying, as he did, a dangerous position, and especially at night, on the track of the railway company within a territory where switching was done and where

the operation in question here was nightly performed, and where cars were being constantly transferred to other roads, to constantly look and listen to avoid the danger of a collision. Todd v. [Cincinnati, N. O. & T. P.] R. Co., 135 Tenn. (8 Thomp.), 92, 185 S. W. 62, L. R. A. 1916E, 555; [Nashville, C. & St. L.] R. Co. v. Parks, 136 Tenn. (9 Thomp.), 367, 189 S. W. 695. The plaintiff in error did not look and listen, as the law required of him, and he was therefore guilty of contributory negligence.''

In that case the contributory negligence of the plaintiff was held a bar to his common law action and under such circumstances it was held that peremptory instructions in behalf of defendant should have been given. Of like effect are Louisville & N. Railroad Co. v. Anderson, 159 Tenn. 55, 15 S. W. (2d) 753; Tennessee Central Railway v. Ledbetter, 159 Tenn. 404, 19 S. W. (2d) 258, 260; Southern R. Co. v. Whaley, 170 Tenn. 668, 98 S. W. (2d) 1061; Nashville C. & St. L. Railway v. Barnes, 177 Tenn. 690, 152 S. W. (2d) 1023; Cincinnati, N. O. & T. P. Railway Co. v. Garrett, 25 Tenn. App. 173, 154 S. W. (2d) 435.

We reach the conclusion that, for the reasons indicated, the learned trial judge erred in not sustaining defendant's motion for a directed verdict at the conclusion of all the evidence upon the ground of deceased's contributory negligence. In this view of the case, it becomes unnecessary to consider the other assignments of error made by defendant or to consider the insistence of plaintiff that the court erred in suggesting a remittitur. The suit will stand dismissed as on directed verdict and the costs adjudged accordingly.

Hale and Burnett, JJ., concur.