Lee Edward NOLEN,
Plaintiff-Appellant,

v.

SOUTHERN RAILWAY SYSTEM, Burlington Northern, William L. Moore, and A.T. Decker, Defendants-Appellees.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Dec. 31, 1985.

Permission to Appeal Denied by
Supreme Court April 28, 1986.

Duncan Ragsdale, Memphis, for plaintiff-appellant.

Thomas R. Price and Jere Fones, Memphis, Price, Vance, & Criss, for Burlington Northern and A.T. Decker.

Everett B. Gibson and Stephen D. Goodwin, Memphis, Laughlin, Halle, Gibson & McBride, for Southern Ry. and William L. Moore.

HIGHERS, Judge.

This appeal is brought by the plaintiff from a directed verdict for the defendants which was granted by the trial court at the conclusion of the plaintiff's proof in the case.

On August 31, 1981, the plaintiff, Lee Nolen, rode a bicycle to the railroad crossing at Neptune Street in Memphis where Neptune is intersected by six sets of tracks. Nolen left the bicycle and walked along the tracks to a business for the purpose of checking about employment. Returning to the crossing on his way home, Nolen was blocked by a train straddling the crossing. The train was assembled by Burlington Northern, but it was to be moved by Southern Railway engines operated by William L. Moore. The Southern train was standing still as Nolen approached it from the south. To the east, or Nolen's right, he spotted another train approaching, heading west on a track adjacent to the Southern train. This was a Burlington Northern train operated by A.T. Decker. Nolen saw the Burlington Northern when it was near an overpass some 800 feet away. When he crossed the track in front of the Burlington Northern, the Southern began to move in an easterly direction, opposite the direction of the Burlington Northern. Nolen testified that he did not have time to retreat across the Burlington Northern line. Instead, he stood between the two moving trains where there were approximately two feet of clearance. While in this position, Nolen was struck on the right side of his head. He could not say what object hit him nor from which train the object protruded, although at one point he apparently indicated he was struck by an object on the Burlington Northern train. He was knocked toward the west and fell underneath the Burlington Northern train, causing severe injuries resulting in the amputation of both his left arm and leg.

Nolen filed suit on July 13, 1982, alleging negligence on the part of both railroads and their employees. The case was tried to a jury but at the conclusion of the plaintiff's proof, the trial court directed a verdict for all defendants.

On appeal, plaintiff argues that a directed verdict was improper because there were contested issues of fact and that the jury could have found in favor of the plaintiff. As a general rule, this court, like the trial court, must take the strongest legitimate view of the evidence in favor of the plaintiff, indulging in all reasonable inferences in his favor, and disregarding any evidence to the contrary. The trial judge's action may be sustained only if there is no material evidence in the record that would support a verdict for the plain-

tiff, under any of the theories that he has advanced. *Atkins v. City Finance Co.*, 683 S.W.2d 331 (Tenn.App.1984).

With reference to the defendants, Moore and Southern, the plaintiff argued that there was negligence per se in that defendants violated Memphis City Code Sections 34–19 and 34–23 forbidding the obstruction of a railroad crossing by a train for more than five minutes. The plaintiff also contended that Southern violated its own rules and Federal Safety Regulations in failing to close the handles on one of its boxcars.

To overturn a directed verdict, plaintiff has only to show that any one of these issues should have been decided by the jury.

Dale Kehr, a general yardmaster for the Burlington Northern, was called to investigate the scene of the accident. He testified that he found a boxcar which had been "set out" from the Southern train in the yard where the Southern train had stopped after the accident. The car had been in the Southern train at the Neptune crossing. Moreover, photographs of it, and Kehr's testimony, show that the door handles were protruding from the car on the south side. Mack Babston on the Southern train stated that protruding door levers were both unsafe and against the rules of the railroad. If the jury believed that one of these door handles struck the plaintiff, then a case of negligence could be made out against Southern and its employees who were supposed to inspect the train.

■ Other evidence, although strongly suggesting that the plaintiff was struck by something extending from the Burlington Northern train, does not absolutely rule out the possibility that the Southern train hit the plaintiff. Nolen was generally facing the Southern train, that is, facing north as the Burlington Northern train was passing. He was struck on the right side of the head suggesting that the Burlington Northern train, coming from his right, was responsible. No one, however, saw him the instant he was hit. He might have turned his head in such a way that a blow from his left would generally have impacted upon the right side of his head. The defendant Decker said that Nolen staggered to the west and north but since this observation was made after the impact, it is inconclusive. He might have staggered in any direction no matter where he was hit. Likewise, the accident diagram suggesting that plaintiff fell to his left or to the west could be explained by his having been carried by the west bound train once he fell into it. The diagram, therefore, is not conclusive evidence that he fell into the train from the west or that he was struck by a westward-moving object. Since all reasonable inferences must be taken in plaintiff's favor, we cannot rule out the possibility that Southern negligently caused plaintiff's injuries. The directed verdict on behalf of Southern and Moore, therefore, is reversed and set aside.

■ With respect to Burlington Northern and Decker, the plaintiff argues that it was Burlington's employees who left the car in the Southern train and failed to secure the door handles, that A.T. Decker, the Burlington Northern engineer, failed to sound the whistle and ring the bell as the Burlington Northern train approached the crossing, according to T.C.A. § 65–12–108, and that he operated the train in excess of the speed limit set out in the Memphis Code § 34–8 and § 34–20.

The evidence, as noted above, suggests that plaintiff was struck from his right. Although this fact is not certain, it is supported by material evidence in the record. The plaintiff testified that he was generally facing north toward the Southern train as the train passed. Engineer Decker said that Nolen staggered to the west and the accident diagram supports the idea that he was struck by the west bound train. Although there is evidence to the contrary, on a review of a directed verdict, it may not be taken into account. We need not delve into the other questions when the evidence on this one point raises a jury question. Moreover, we need not be concerned that only one of these trains struck the plaintiff. The evidence does not preclude either one. Thus, the jury must decide the question.

The defendants argue that plaintiff was contributorily negligent because he did not return to a place of safety when he saw the Burlington Northern train approaching. Rather, he allowed himself to be caught between the two moving trains. Contributory negligence is generally a question of fact for the jury. *Hood v. Waldrum*, 50 Tenn.App. 512, 434 S.W.2d 94 (1968). Where the facts are undisputed, however, it becomes a question of law for the court. *Cincinnati N.O. & T.P. Ry. Co. v. Garrett*, 25 Tenn.App. 173, 154 S.W.2d 435 (1941). The facts here are not undisputed. The defendants claim that plaintiff saw the approaching Burlington Northern train within ample time to get back across the tracks. The plaintiff testified, however, that he did not have time to retreat. Even engineer Decker, who had worked many years in switch yards, did not consider standing between two moving trains to be dangerous. For this reason, he did not stop the Burlington Northern train when it became clear that plaintiff was not going to return to the south side of the tracks. He did not attempt to stop the train for some 1000 feet until plaintiff was struck. Consequently, if Nolen was hit by an object extending from the Burlington Northern train, Decker may have had the last clear chance to avoid the accident. If so, this would affect any question of plaintiff's negligence. *Street v. Calvert*, 541 S.W.2d 576 (Tenn.1976). We do not conclude that plaintiff may not have been contributorily negligent as a matter of fact. We conclude only that he was not contributorily negligent as a matter of law so as to justify a directed verdict against him.

Because we reverse the judgment below and remand the cause for a new trial, we do not address the allegation of jury misconduct. On remand the jury will be new and the evidence will be presented afresh. Further, since the case was terminated by a directed verdict and never presented to the jury, we see no relevance to this issue.

We will comment, however, upon the exclusion of the testimony of the expert, Dr. Depperschmidt, since this matter is likely to arise upon retrial. Dr. Depperschmidt's testimony was taken in an offer of proof. Given that plaintiff was 100% permanently and totally disabled from manual labor and given that plaintiff had only a fifth grade education and was thus unequipped for cerebral work, Dr. Depperschmidt stated that he could calculate plaintiff's loss of future earning capacity. Defense counsel objected not so much to Dr. Depperschmidt's qualifications as to the correctness of the assumptions underlying his calculations. They contended that plaintiff had more than a fifth grade education, that plaintiff's salary was not $210 per week as assumed by the witness, and that the witness was required to translate the plaintiff's anatomical disability to work disability which he was not qualified to do. Dr. Depperschmidt by his own admission is not qualified to establish this relationship between physical impairment and occupational disability. Plaintiff's counsel argued, nevertheless, that the total and permanent nature of Nolen's disability is obvious even to laymen and does not require corroboration from expert witnesses. The trial court disallowed the testimony, however, relying on the case of *Morgan v. Cashion*, 638 S.W.2d 387 (Tenn.App.1982).

In that case, the same expert, Dr. Depperschmidt, was called to testify about plaintiff's loss of future earning capacity. He based his conclusion, that plaintiff would lose from twenty to forty percent of her future earnings, on the prior medical testimony establishing 20% permanent pulmonary impairment and 20% permanent orthopedic disability. Objection was made to the introduction of this testimony. This Court held that the witness was not qualified to testify to the relationship between anatomical disabilities and the impairment of future earning capacity. It may not be assumed, therefore, that work disability is directly proportionate to physical disability.

The case at hand presents an even stronger basis for rejecting the testimony than that presented in *Morgan v. Cashion, supra.* Here, there is no expert evidence establishing the percentage of plaintiff's

physical disability much less his employment disability. The plaintiff argues, not without reason, that the extent of plaintiff's physical impairment is clear without the testimony of experts. Even so, the assumptions underlying Dr. Depperschmidt's testimony must be in the record or susceptible of proof before he may state an opinion based upon hypothetical facts. The trial court, therefore, correctly excluded the testimony of the expert in the absence of any proper factual foundation for the witness' assumptions.

For the reasons stated, the judgment of the court below is reversed as to all defendants and the cause is remanded for a new trial. Costs of the appeal are adjudged against all defendants.

TOMLIN and CRAWFORD, JJ., concur.