EDENTON *v.* McKELVEY.

(*Jackson*, April Term, 1948.)

Opinion filed June 12, 1948.

Rehearing denied July 17, 1948.

Ross & Ross, of Savannah, for plaintiff Frances Mc-Kelvey.

Robert P. Adams, of Trenton, and P. M. Harbert, of Savannah, for defendant J. V. Edenton.

Mr. Chief Justice Neil delivered the opinion of the Court.

This case originated in the Circuit Court of Hardin County in an action for damages for personal injuries. There was a verdict for the plaintiff, which was approved by the trial judge. An appeal was thereupon prayed and granted to the Court of Appeals where the judgment

of the trial court was reversed, four of the nine Judges of the said Court dissenting. The issue upon which the Court was in disagreement by a vote of five to four was whether or not the plaintiff's contributory negligence barred her right of action.

We granted *certiorari* and oral argument was recently heard at the session of court in Jackson. The determinative question, in fact the only question, presented in the petition for *certiorari* is whether or not the trial judge should have held as a matter of law that the contributory negligence of Frances McKelvey barred her right of recovery.

Mr. Justice BURNETT, writing the majority opinion of the Court, gave an affirmative answer to this question, that is, that Miss McKelvey, while riding as a guest of Edenton, was guilty of negligence as a matter of law because she knew, or had reason to believe, that he was not capable of driving his automobile on account of drunkenness; that the proof of the extent of his intoxication was so manifest that reasonable men should not be in disagreement about it.

Now, the four members of the Court who dissented were of opinion that when the evidence was considered in its most favorable light for the plaintiff and against the defendant that it was a jury question. In other words, it was a question for the jury to say whether Miss McKelvey knew that Edenton was too drunk to safely drive his automobile and, as we understand the minority view, reasonable men might differ as to the extent of her knowledge of his intoxication and hence it made a jury question. We do not understand, however, that the Court differed as to Edenton being drunk, but there might be ground for argument among reasonable men as to whether she knew enough about his intoxica-

tion, and the extent of it, that a person of ordianry care and prudence would not ride with him.

Should this question be decided upon the testimony of the plaintiff alone? The evidence most favorable to the plaintiff's case is what she says herself; that is, that she smelled nothing on his breath, and at one time (at the dance at Pulaski) she saw him take ''a few fancy dance steps.'' Also her further statement, ''One time, I thought that maybe he was drinking, but I could not smell it.''

We do not understand that the plaintiff's evidence alone as to what she knew or did not know is controlling. Reasonable men would not differ if confined strictly and alone to her statement. The response would be in her favor. The question turns upon whether reasonable minds would differ as to what she should have known, based upon undisputed facts, or events which took place prior to the alleged accident.

■ The majority opinion cites the case of *Packard* v. *Quesnel*, 112 Vt. 175, 22 A. (2d) 164, 167, with numerous supporting authorities, which holds that ''if a person voluntarily rides in an automobile driven by one who is intoxicated and the passenger knows, *or under the circumstances should have known*, the intoxicated condition of the driver he is precluded from recovering from such driver;'' etc. (Italics ours.)

The above authority finds support in our own case of *Hicks* v. *Herbert*, 173 Tenn. 1, 113 S. W. (2d) 1197. Also the following from Volume 4, Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., pages 607, 608, and quoted in the dissenting opinion:

''Briefly, actual ascertainable intoxication is essential, and no contributory negligence in this connection can be asserted where, at the crucial time of undertaking or

continuing the status of guest, the operator of the motor vehicle is not intoxicated to the knowledge of the guest, or to such extent that the latter is to be charged with knowledge; and, where at the inception of the journey and during its early progress, nothing in the driver's conduct betrays his being under the influence of liquor, the guest is not deemed at fault in intrusting himself in a vehicle under such driver's control. And where the guest has no opportunity to alight after discovering that the driver is intoxicated, he is not negligent.''

There is a conflict in the plaintiff's and defendant's testimony as to drinking among the four occupants of the automobile between Savannah and Pulaski and possibly on the return trip. Miss McKelvey states very positively she saw no drinking and did not take a drink herself. The defendant's testimony was to the contrary. In deciding the question before us, consideration of this evidence is pretermitted since reasonable minds might differ upon this issue.

The only undisputed evidence we have as to the plaintiff's knowledge of the defendant's intoxication is the following:

"Q. 96. Now, and you smelled nothing at all to drink on either of those boys' breaths? A. No, sir, I did not.

"Q. 97. And you didn't when you were dancing with them there at Pulaski? A. I thought one time that Mr. Edenton might be, have just a little to drink, but I didn't know for sure.

"Q. 98. Why did you think that? A. Well, he kinda cut up a little.

"Q. 99. What did he do? A. Just some fancy dance steps.

"Q. 100. And you were dancing with him? A. No, not when I was dancing with him, he was out there by himself then.

"Q. 101. And what else did he do to make you think he might have had a little to drink? A. That was all."

She later said on redirect examination "that had she known he was intoxicated she would not have started out with him." On recross examination she said, "I know he wasn't drunk."

The accident happened about two o'clock in the morning. All the injured, and Miss Barber, who was dead, were brought to Savannah, arriving there about 3:30 or 4 o'clock.

 There is testimony by Dr. Hughes who treated these boys, Edenton and Hamrick, his companion, that they were under the influence of liquor and that there was a strong odor of whiskey upon them. He was corroborated by Mr. Farris, the proprietor of the hotel at Savannah. It is argued by respondent's counsel that this being undisputed, their condition was within the knowledge of the plaintiff. But we cannot accept this as true in deciding the present issue. While it was probably true, yet to reach this conclusion we would have to base an inference upon an inference. It is not proper to infer a thing to be true merely because some other thing is inferred or supposed to be true. At best, it is for the jury to say whether or not she was chargeable with the same knowledge.

The observation of Dr. Hughes and Mr. Farris took place two hours or more after this accident. Moreover, the plaintiff's sense of smell may not have been as acute as Dr. Hughes'. Furthermore, it is shown that she was seated behind Edenton while returning from Pulaski and she did not have the same opportunity of observing

his features and actions. There is no question but that she suspected that Edenton was drinking to some extent when they left Pulaski, but there is nothing to show that at that time she had reason to believe he was incapable of safely driving an automobile. He drove the car some seventy miles before the accident occurred and there is no evidence of how he appeared or acted during this time, except at one time it was suggested (just before the accident) that he was driving too fast and he slowed down. The following statement by Judge McAmis regarding the plaintiff's conduct is persuasive:

"There is at most an admission by plaintiff that in Pulaski, 70 miles from the point where the injury occurred, plaintiff had a suspicion or thought that defendant, perhaps, was mildly under the influence of liquor. When she entered the car she was 80 miles from home at one or two o'clock in the morning. Except for this admission her testimony is that she did not know defendant was drinking. She rode for 70 miles without mishap before she was injured. The inference from her testimony is that she suspicioned or thought defendant might be drinking only 'one time' and that was at the dance hall in Pulaski. Before a verdict should be directed it would have to appear by uncontradicted evidence that plaintiff knew or by the exercise of reasonable prudence and care should have been conscious, of the danger up to the time of the injury. The jury, under plaintiff's testimony, could take the view that there was no contributory negligence or that there was only remote contributory negligence in entering the car and riding with defendant."

The case of *Hicks* v. *Herbert, supra,* is not in conflict with this opinion. There it was conclusively shown that the plaintiff and his companions, including the defendant,

were under the influence of liquor. It was not a matter of dispute. The trial judge directed a verdict for the defendant "because his intoxication was obvious," citing *Schwartz* v. *Johnson*, 152 Tenn. 586, 280 S. W. 32, 33, 47 A. L. R. 323.

We have also considered *Schwartz* v. *Johnson*. In this case both the guest and the driver were intoxicated. They each had taken "about twelve drinks of whisky," and this was held sufficient to bar the right of action of the intestate. The ruling was correct but does not control the instant case.

These guest cases where the parties are alleged to be under the influence of whiskey, and chargeable with negligence and contributory negligence, are difficult of solution. The factual situations are generally different. No two cases are alike. It is said that every case of this kind ought to be decided on its own merits rather than upon precedents found in the Reports. We are inclined to this view.

The instant case has not been without its difficulties, as shown by the extreme care and consideration given it by the lower courts, and their several opinions upon the merits. It is a close case, but our final conclusion is that the Court of Appeals should be reversed and the trial court affirmed.

BURNETT, J., not participating.

PREWITT, GAILOR, and TOMLINSON, JJ., concur.

### ON PETITION TO REHEAR.

The plaintiff in error has petitioned the Court for a rehearing, complaining that no consideration was given to the question of the speed of the automobile; that since

the plaintiff testified she knew he was driving "too fast," and not having protested "personally and continually" to the driver of the automobile, her negligence in this regard should bar her right of action. Contention is made that this is a question of law for the Court.

The petitioner makes the further insistence that the Court was in error in holding that her knowledge of Edenton's intoxication, and her riding with him after such knowledge which she had or such which she should have had by the exercise of reasonable care, was sufficient to take the case from the jury.

■ In response to the first contention that we overlooked and gave no consideration to the negligence of plaintiff in riding with defendant when she knew he was driving "too fast," we think that counsel himself overlooked that part of the opinion in which reference was made to the fact that when the driver, Edenton, was cautioned by Hamrick that he was driving too fast that he thereupon reduced his speed, or to use the language of the witness, "slowed down." The accident happened very shortly thereafter. We readily agree with the contention that a guest should continue to protest against fast and reckless driving; in other words, he "cannot rely upon the care and [vigilance] of the driver." *Louisville & N. R. R.* v. *Anderson*, 159 Tenn. 55, 64, 15 S. W. (2d) 753, 755.

■ It is true the Court used the language that the "duty was personal and continuing," citing *Dedman* v. *Dedman*, 155 Tenn. 241, 246, 291 S. W. 449; *Stem* v. *Nashville Interurban Ry.*, 142 Tenn. 494, 221 S. W. 192, and other cases. But where a guest is shown to have warned the driver by having her companion, who sits beside her on the rear seat, caution the driver about his excessive speed that this is a substantial compliance with the rule

as to personal remonstrance. This actually took place in the instant case. Inasmuch as the driver "slowed down," we are justified in presuming that there was no occasion for further remonstrance. Moreover, she was in the back seat of the car where she could not see the speedometer. It was dark and all the plaintiff knew was that the automobile was being driven at a speed which she disapproved. She is presumed to have been in the exercise of due care.

The Court had no intention of relaxing the rule which requires constant care and vigilance on the part of a guest in an automobile. It was not deemed necessary to distinguish the cases announcing the rule of continued vigilance from the instant case since our original opinion made no departure or exception to those cases as well as other previously well considered opinions.

The petitioner's further complaint that the Court made no distinction between the plaintiff's "actual knowledge" of defendant's intoxication and her duty to learn the extent of it, we concede that it was her duty to be especially observant of the driver if his conduct and appearance was thought to be unusual. She stated the extent of her observation, which we think was that of an ordinarily prudent person. This is all the law required. Upon her statement, and other facts submitted to the jury, the trial judge properly submitted the issue as to whether or not a person in the exercise of reasonable care and foresight would consider it safe or unsafe to ride with the defendant as his guest.

The petition is denied.

All concur.