## WALTER RUSSELL BRAY, Plaintiff in Error, v. LEE M. HARWELL, Defendant in Error.—360 S. W. (2d) 58.

Western Section at Jackson. March 23, 1962.

Certiorari Denied by Supreme Court September 7, 1962.

John R. Gilliland, Memphis, Montedonico, Boone, Gilliland, Heiskell & Loch, Memphis, of counsel, for plaintiff in error.

Evans, Petree & Cobb and Hulon O. Warlick, Memphis, for defendant in error.

BEJACH, J.  In this cause, plaintiff in error, Walter Russell Bray, appeals in error from a judgment against him in the sum of $10,000 recovered in the Circuit Court of Shelby County, Tennessee by Lee M. Harwell, the defendant in error. In this opinion, the parties will be referred to as plaintiff and defendant, or called by their respective names. The injuries sustained by plaintiff and the judgment recovered by him resulted from an accident which occurred about 10:30 o'clock P. M., July 5, 1960. The accident occurred on Wells Station Road, Memphis, Tennessee about six (.6) tenths of a mile north of the intersection of said Wells Station Road and Gray Road. Originally, Lawanda Bray, wife of Walter Russell Bray, was also named as a defendant; but during the trial a non-suit was taken as to her.

On July 5, 1960, between 10 and 11 o'clock P. M., plaintiff was riding as a guest in the automobile of defendant, Walter Russell Bray, which was at that time being driven by him. While being driven northwardly at a high rate of speed, said automobile of defendant collided with a car parked on the east side of Wells Station Road near its intersection with Verbena Road. As a result of said collision, plaintiff, Lee M. Harwell, sustained severe injuries consisting of lacerations about the nose, lip, chin, and right ear, and fractures of the right foot and right jaw. His medical and hospital bills already incurred amount to more than $2,000, and such bills anticipated

for future treatments total nearly $1,000. Plaintiff's declaration is in three counts. The first count alleges common law negligence in failing to keep a lookout ahead, in driving at an excessive and dangerous rate of speed, in refusing to reduce his speed when requested to do so, and in driving in such a reckless manner as to lose control of his car. The second count alleges violation of sections 59-852 and 59-859, T. C. A., in that defendant was driving in excess of 55 miles per hour at night, and was guilty of reckless driving. The third count alleges violation of city ordinances of the City of Memphis fixing the speed limit at 35 miles per hour, and prohibiting reckless driving as therein defined.

A short time before the accident, plaintiff, who was an insurance salesman for National Life and Accident Insurance Co., met a business associate at Garner's Drive-In Grocery which is located at the northwest corner of Wells Station Road and Gray Road. Defendant was at said Garner's Drive-In at that time. He and plaintiff were casual acquaintances, having been introduced to each other about two weeks prior to the date of the accident, and plaintiff had made an appointment with defendant and his wife for the morning of July 6, 1960 to discuss their life insurance program. There was some discussion about defendant's automobile, a white car, which was there at the Drive-In, and on which defendant had been working. Defendant invited plaintiff and a man named Briscoe to go for a ride in said car. After a short drive, it was noted that the car was not functioning properly, and defendant drove it to his home which was located about a block from Garner's Drive-In. From defendant's home, they returned to Garner's Drive-In in a brown and white Ford, which was registered in the name of defend-

ant's wife. Defendant testified that he told plaintiff that he, Bray, had put a new air jet on the carburetor of said automobile, and wanted to see how it was working. After their return to Garner's Drive-In, plaintiff, defendant, and Briscoe went for a ride in plaintiff's Fiat automobile, a small foreign made car, driving north on Wells Station Road beyond the point where the accident occurred a short time later. They returned to Garner's Drive-In by a different route. After their return to Garner's, defendant told plaintiff and Briscoe that he was going to test his car to see how it drove with reference to pick-up and speed since he had installed the new air jet. He invited defendant and Briscoe to ride with him. Defendant testified that he told plaintiff that he was going to test the speed of his car, but plaintiff testified that he had merely said he was going to "test it". There is also some testimony by plaintiff that he understood the purpose of the ride was to take Briscoe home. At any rate, the three of them drove off in defendant's car, with defendant driving, Briscoe sitting in the middle and plaintiff on the outside, all three on the front seat. They drove off on Wells Station Road, and immediately after the start, defendant pressed the accelerator of his car down to the floor board. According to testimony of plaintiff, Briscoe said to him, "Harwell, are you scared?" To which plaintiff replied, "Yes, I wish he would slow down." On cross examination, defendant admitted that this statement was made to Briscoe and not to defendant, and that it was made in an ordinary tone of voice. Counsel for defendant points out, and the record corroborates him, that several times during the examination of plaintiff, he was required to speak louder so that he could be heard by the court and the jury. According to the testimony of Officer K. L. Rose,

who investigated the accident, the distance from the corner of Wells Station Road and Gray Road to the place where the accident occurred, is six-tenths of a mile. This distance is also established by testimony of other witnesses. The defendant admitted that within a few seconds time after starting he had accelerated the speed of his car to 70 miles per hour, but he testified that he had slowed down to about 45 miles per hour, for the purpose of causing the engine to back-fire. Counsel for defendant admits that negligence of the defendant was the proximate cause of the accident. He relies on contributory negligence on the part of plaintiff as his main defense.

In this court, defendant, as appellant, has filed four assignments of error. These assignments of error present for determination by this court four questions, which are as follows: 1. Did the trial court err in refusing to grant the defendant's motion for a directed verdict, made at the close of the defendant's proof, and renewed at the close of all the proof? 2. Did the trial court err in refusing to give in charge to the jury a special request presented by defendant? 3. Did the trial court err in the charge which was given to the jury? 4. Was the verdict in this cause excessive?

Defendant's principal contention is that his motion for directed verdict should have been granted; and, in support of this contention he cites the cases of Dedman v. Dedman, 155 Tenn. 241, 291 S. W. 449; L. & N. R. R. Co. v. Anderson, 159 Tenn. 55, 15 S. W. (2d) 753; Webster v. Trice, 23 Tenn. App. 365, 133 S. W. (2d) 621; King v. Tenn. Central R. Co., 36 Tenn. App. 192, 253 S. W. (2d) 202; Talbot v. Taylor, 184 Tenn. 428, 201 S. W. (2d) 1; Edenton v. McKelvey, 186 Tenn. 655, 212 S. W. (2d) 616; Pikeville Fuel Co. v. Marsh, 34 Tenn. App. 82, 232 S. W.

(2d) 789; Stem v. Nashville Interburban Ry., 142 Tenn. 494, 221 S. W. 192; and Hicks v. Herbert, 173 Tenn. 1, 113 S. W. (2d) 1197. These cases announce and apply the principle that a plaintiff who rides in an automobile driven at an excessive rate of speed, by a drunken driver, or otherwise in violation of law which constitutes the proximate cause of his injuries, may be barred, as a matter of law, by his own contributory negligence, where such plaintiff knows or, as an ordinarily prudent person, ought to know the situation. Of course, in such cases a directed verdict should be granted only where the court is of opinion that reasonable minds could not differ as to the conclusion to be drawn from the undisputed proof.

In the instant case, it is our opinion that reasonable minds might well differ on the question of whether or not plaintiff's own contributory negligence, if any, should, as a matter of law, bar his right of recovery in this case. The jury might properly have found as a fact, from the evidence before it, that defendant did hear plaintiff's statement to Briscoe that he was afraid and wished that defendant would slow down; and, in view of the short time which elapsed between the start of the ride and the occurrence of the accident,—less than 45 seconds,—plaintiff might not have had time to voice any second protest. Also, according to defendant's own testimony, he slowed his car down from 70 miles per hour to about 45 miles per hour, and the jury might well have considered that this was sufficient compliance with plaintiff's protest, whether or not defendant had heard same. Our calculation as to the elapsed time being less than 45 seconds, or three-fourths of a minute, is based on defendant's own estimate of speed, 70 miles per hour, taken in connection with the distance traveled, which was six-tenths of a mile. In the

case of Dedman v. Dedman, the Supreme Court, speaking through Mr. Chief Justice Green, said:

"One riding in an automobile as a guest cannot rely upon the care and negligence (a misprint for vigilance) of the driver to the extent of relieving himself from the exercise of reasonable precautions for his own safety. This obligation is personal and continuing. Stem v. Nashville Interurban Ry., 142 Tenn. 494, 221 S. W. 192. A guest, although not driving the car, must exercise due care for his own safety. Hurt v. Y. & M. B. R. Co. (should be Y. & M. V. R. Co.), 140 Tenn. 623, 205 S. W. 437. If an adult, while riding in a car driven by another, sees, or ought by due diligence to see, that the driver is not taking proper precautions, it is the duty of the passenger or guest to remonstrate or give some warning of danger, and a failure to do so is negligence. Knoxville Railway & Light Co. v. Vangilder, 132 Tenn. 487, 489, 178 S. W. 1117, L. R. A. 1916A, 1111. To the same effect is Tennessee Central R. Co. v. Vanhoy, 143 Tenn. 312, 226 S. W. 225.

\* \* \* \* \* \*

"In all the cases so far decided by this court, the question of the guest's contributory negligence has been held to be one for the jury. In the case before us, it is said, on the one hand, that the plaintiff here knew the road over which they were traveling; that she sat on the front seat with the speedometer before her; that there was nothing to obstruct her view; that she was in the habit of running a car herself and was capable of judging speed, yet, notwithstanding the unlawful rate of speed at which the car was pro-

pelled, plaintiff paid no attention whatever to such operation of the car, and sat engaged in conversation with the ladies to her rear, with no word of warning or protest to the chauffeur; that the chauffeur was a negro boy, the servant of her mother-in-law, and while perhaps not technically under plaintiff's control, that he would in all probability heed any direction she gave him as to slackening speed. It is urged that in so conducting herself, shutting her eyes to the movements of the automobile, the plaintiff failed to exercise ordinary care for her safety, and was guilty of such negligence as to bar her recovery herein as a matter of law.

"On the other hand it is said that the automobile was traveling over a smooth road. That it was a heavy car, capable of attaining high speed without noticeable vibration; that such a car on such a road may easily run 35 or 40 miles an hour without attracting notice from its occupants; that the car was in charge of an experienced operator, reputed to be careful; and that plaintiff was entitled to rely largely on the skill of this chauffeur for her safety, until something in the movements of the car or her surroundings challenged her attention to danger; that she had not noticed excessive speed nor approach to the road crossing; that the safe driving of a car is not promoted by interference with the driver and suggestions to him from passengers; that situated as she was plaintiff did not fail in the exercise of ordinary care by engaging in conversation with her companions and letting the chauffeur alone.

"Comparing the respective contentions of the parties thus outlined, we are satisfied that reason-

able men might differ as to whether the plaintiff acted with ordinary care under the circumstances disclosed—as to whether she conducted herself as a prudent person ordinarily would do. In this plight of the case, the question of her contributory negligence was one for the jury. Roofing & Mfg. Co. v. Black, 129 Tenn. 30, 164 S. W. 1183 [51 L. R. A., N. S., 340].'' Dedman v. Dedman, 155 Tenn. 246-248, 291 S. W. 451.

Edenton v. McKelvey, 186 Tenn. 655, 212 S. W. (2d) 616, was a case in which plaintiff was injured while riding in a car driven by a driver under the influence of intoxicants. The question of speed is also involved. Plaintiff had recovered a judgment in the lower court, which was reversed by the Court of Appeals, with certiorari granted by the Supreme Court. The Supreme Court reversed the Court of Appeals and reinstated the verdict of the lower court. From the Supreme Court's opinion written by Mr. Chief Justice Neil, we quote as follows:

"There is testimony by Dr. Hughes who treated these boys, Edenton and Hamrick, his companion, that they were under the influence of liquor and that there was a strong odor of whiskey upon them. He was corroborated by Mr. Farris, the proprietor of the hotel at Savannah. It is argued by respondent's counsel that this being undisputed, their condition was within the knowledge of the plaintiff. But we cannot accept this as true in deciding the present issue. While it was probably true, yet to reach this conclusion we would have to base an inference upon an inference. It is not proper to infer a thing to be true merely because some other thing is inferred or supposed to be true. At best, it is for the jury to say

whether or not she was chargeable with the same knowledge.

"The observation of Dr. Hughes and Mr. Farris took place two hours or more after this accident. Moreover, the plaintiff's sense of smell may not have been as acute as Dr. Hughes'. Furthermore, it is shown that she was seated behind Edenton while returning from Pulaski and she did not have the same opportunity of observing his features and actions. There is no question but that she suspected that Edenton was drinking to some extent when they left Pulaski, but there is nothing to show that at that time she had reason to believe he was incapable of safely driving an automobile. He drove the care some seventy miles before the accident occurred and there is no evidence of how he appeared or acted during this time, except at one time it was suggested (just before the accident) that he was driving too fast and he slowed down.

\* \* \* \* \* \*

"These guest cases where the parties are alleged to be under the influence of whiskey, and chargeable with negligence and contributory negligence, are difficult of solution. The factual situations are generally different. No two cases are alike. It is said that every case of this kind ought to be decided on its own merits rather than upon precedents found in the Reports. We are inclined to this view.

"The instant case has not been without its difficulties, as shown by the extreme care and consideration given it by the lower courts, and their several opinions upon the merits. It is a close case, but our final

conclusion is that the Court of Appeals should be re-versed and the trial court affirmed." Edenton v. Mc-Kelvey, 186 Tenn. 660-662, 212 S. W. (2d) 618.

The case of Stem v. Nashville Interurban Ry., 142 Tenn. 494, 221 S. W. 192, was one in which suit was brought for the death of a passenger riding as a guest in an automobile, said death caused by a crossing collision between the automobile and a car of the Interurban Rail-way. In this case the trial court had granted a motion for directed verdict. From the Supreme Court's opinion writ-ten by Mr. Justice Bachman, we quote as follows:

"We, of course, do not mean to say that liability can be based upon the rate of speed alone, but in con-nection with the allegations of a dangerous crossing, unless there is an absence of substantiating proof, which is not the case here, it does not lie within the province of the court to determine the question. Whether there is any evidence is to be determined by the court; the question of the preponderance of the evidence is primarily for the jury. With reference to the contributory negligence of the deceased, we are of opinion that this issue should also have been sub-mitted to the jury. That the negligence of the driver of the automobile cannot be imputed to the deceased is too well settled to require the citation of authority. It is likewise true that one occupying a vehicle as a guest cannot rely upon the care and vigilance of the driver to the extent of relieving himself from the exercise of reasonable precautions for his own safe-ty; this obligation is a continuing personal one. It is shown in the evidence here that at the time of and immediately prior to the collision the deceased was

exercising no care to ascertain the existence of the railway track or the approach of the car. This would, nothing else appearing, preclude any right of recovery by her administrator. There is, however, evidence in the record tending to show that, on account of obstructions along the route traversed by the automobile, to have looked and listened would not have warned her of peril. To look and listen for cars at crossings is a positive, fixed duty, when by such precautions they may be seen or heard, and in such cases a failure of observance will bar recovery. Where, however, in exceptional cases, because of conditions not created by, nor under the control of a traveler, these precautions would not apprise one of danger, their exercise may be excused. The case will be reversed and remanded for a hearing in accordance with this opinion.'' Stem v. Nashville Interurban Ry. Co., 142 Tenn. 508-509, 221 S. W. 196.

In the case at bar, as stated above, reasonable minds might very well differ as to whether or not plaintiff was guilty of contributory negligence which was part of the proximate cause of his injuries; and the jury might properly have found, as it did, that plaintiff was not guilty of contributory negligence under the particular facts and circumstances of this case.

Appellant's second assignment of error complains of the refusal of the trial judge to give in charge to the jury the following special request, to wit:

"With respect to the duty required by one riding as a guest in an automobile to use due care for his own safety, I charge you that if such guest sees, or ought by the exercise of due diligence to see, that the driver

is operating the automobile recklessly or at too fast a speed, such guest is obligated to protest, and to continue to protest unless the driver heeds such warning.''

We have carefully read the trial judge's charge in this case, and it is our opinion that the charge as given amply covers the subject matter of this special request.

Appellant's third assignment of error complains of the following portion of the trial judge's charge, as given, to wit:

"However, if a driver is proceeding at a lawful and proper rate of speed and is driving in a prudent and proper manner, the guest may rely upon the fact that he will so continue; and if the driver suddenly commits some act of negligence before the guest has time to protest or give warning, then that act of negligence on the part of the driver may not be imputable to the guest."

Counsel for appellant does not contend that this is an inaccurate statement of law. His position is that it is inapplicable to the facts of the case at bar. We think, however, that, in view of the extremely short time that the ride lasted, this charge might properly be considered as applicable to the entire ride. Also, the trial judge charged the jury fully, both on the subject of direct contributory negligence and remote contributory negligence, and refused to charge on the subject of gross or wanton negligence which would have barred defendant's right to rely on the defense of contributory negligence at all, and this, notwithstanding such gross and wanton negligence was alleged in plaintiff's declaration. Under all of the circumstances, we think the trial judge's charge was not

only accurate, as given, but was as favorable to defendant's contentions as defendant could possibly have had any right to expect.

Appellant's fourth assignment of error claims that the verdict in this cause is excessive. Counsel for appellant concedes that, independent of the defense of contributory negligence, the amount of the verdict is reasonable. His contention, however, is that even if plaintiff be not held guilty of contributory negligence which would bar his right of action entirely, he should have been found guilty of remote contributory negligence which should have reduced the amount of the verdict, and that the jury had failed to make such reduction. As stated above, the trial judge charged the jury fully with reference to the law on remote contributory negligence. Either the jury found that plaintiff was not guilty of remote contributory negligence which would warrant a reduction of the amount of the verdict, or else it has already applied that principle and reduced the amount of the verdict to the figure returned. In either event, we think the assignment of error is without merit.

All of appellant's assignments of error will be overruled and the judgment of the lower court will be affirmed. The costs of the cause will be adjudged against the defendant and his surety on the appeal bond.

Avery, P. J., (W. S.), and Carney, J., concur.