IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 21, 2004 Session

**SHIRLEY PATRICIA GILLIAM, Mother and next of kin of
LaSHUN HALL, Decedent
v.
MICHAEL G. DERRICK, Administrator *Ad Litem* for the Estate of
SANTRES A. JOHNSON, Decedent**

**An Appeal from the Circuit  Court for Shelby County
No. 92742-1 T.D.   John R. McCarroll, Jr., Judge**

_____

**No. W2003-01353-COA-R3-CV - Filed September 24, 2004**

_____

This is a wrongful death action.  The plaintiff's decedent was riding as a passenger in a car driven by the defendant's decedent.  The car collided at a high rate of speed into the guard rail of a bridge. Both the driver and the passenger died in the accident.  It was later determined that the driver was intoxicated, but that the passenger had not been drinking.  The plaintiff, the mother of the passenger, filed this wrongful death action against the estate of the driver, alleging that the driver's negligent conduct caused the death of her son.  After a jury trial, the jury returned a verdict in favor of the defendant.  The jury concluded that the passenger was 50% at fault for his demise, because the passenger knew or should have known that the driver was intoxicated when he got into the car.  The plaintiff now appeals.  We reverse, finding no material evidence to support the jury's conclusion that the passenger knew or should have known that the driver was intoxicated.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is
Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Walter Bailey, Jr., Memphis, Tennessee, for the appellant, Shirley Patricia Gilliam, Mother and next of kin of LaShun Hall, decedent.

Edward M. Hurley, Jr., and Kimberly Schuerman, Memphis, Tennessee, for the appellee, Michael G. Derrick, Administrator *Ad Litem* for the Estate of Santres A. Johnson.

**OPINION**

This lawsuit arises out of a tragic one-car accident that claimed the lives of two young men. On September 30, 1997, at approximately 8:00 or 8:30 p.m., seventeen-year-old Santres Johnson ("Santres") was driving westbound on the Hernando Desoto Bridge. Nineteen-year-old LaShun Hall ("LaShun") was riding in the front passenger seat, and Larry Clements ("Larry") (age unknown) was riding as a passenger in the back seat. According to witnesses, Santres was driving at a high rate of speed, weaving in an out of cars on the bridge. Suddenly, he hit the right guard rail of the bridge, and the car flipped over and burst into flames. Santres and LaShun died as a result of the accident. Larry survived, but sustained serious injuries.

On February 4, 1998, Plaintiff/Appellant Shirley Patricia Gilliam ("Gilliam"), LaShun's mother, filed the instant wrongful death action against Defendant/Appellee Michael G. Derrick, Administrator *Ad Litem* for the estate of Santres ("defendant").[1] On April 7, 8, and 9, the case went to trial by jury.

Antonio Hall ("Antonio"), LaShun's twenty-two-year-old brother, testified in his deposition about the events leading up to the accident.[2] Antonio said that, at approximately 5:00 or 5:30 p.m. on the night of the accident, he and LaShun were riding around Memphis, Tennessee, in Antonio's pearl-colored 1994 Lexus GS 300. As they were riding, they saw Santres and Larry at an auto body shop. Santres was at the body shop getting a repair estimate on his 1996 Chevrolet Impala that had been wrecked. Antonio said that, as they were leaving the body shop, he got in Santres' Impala with Santres and Larry, and let LaShun take his Lexus. The three in the Impala then drove around for about an hour to an hour and a half. Meanwhile, LaShun took the Lexus to be cleaned and went to visit a friend.[3]

Antonio testified that, during the course of the evening, he, Santres, and Larry met up with some young women Santres knew in a neighborhood in north Memphis. Santres made plans for them to meet the women later at a car auction in Arkansas. Later, the trio met the women at a neighborhood BP gas station. While there, Antonio and Santres drank a fifth of Hennessy Cognac. Antonio was unsure about whether Larry drank any of the cognac. Antonio said that he took his last drink at about 7:40 or 7:45 p.m. They left only a small amount of cognac in the bottle, which they gave to another friend at the gas station.

---

[1]Larry had originally filed a lawsuit against the estate of Santres, but his suit was voluntarily dismissed for reasons not apparent in the record.

[2]The parties agreed that Antonio was unavailable for trial due to the fact that he was in a federal prison in Atlanta, Georgia, and that his deposition was admissible as evidence at trial. By the time the case went to trial, Antonio had died of causes not apparent in the record.

[3]Antonio later testified that he was "not quite sure where [LaShun] went" during that time, but he assumed that LaShun went to visit "a lady friend."

Antonio testified that, when they were ready to leave the gas station, he paged LaShun to pick him up. LaShun arrived at the gas station in the Lexus, and Antonio got into the driver's seat. Antonio and LaShun in the Lexus followed Santres and Larry in the Impala to Santres's house so that Santres could drop off his car. Then all four of them got into the Lexus, with Antonio at the wheel, to go to Antonio's house. When they arrived, Antonio got out of the car, gave the car to Santres to use for the evening, and went inside the house.[4] LaShun began to go inside the house as well, but Santres asked if he wanted to go out with Larry and him. LaShun agreed, and he got in the front passenger seat of the Lexus. Larry rode in the back seat of the car. The women they had met at the gas station had followed the group in their gray Toyota Four Runner and were waiting on the street for Santres and the others. After the three drove away in the Lexus, Antonio testified, he never heard from them again. About thirty to thirty-five minutes later, Antonio said, he received a call from Santres's sister, who was Antonio's girlfriend, and learned that Santres, LaShun, and Larry had been in a wreck. He later discovered that Santres and LaShun had died as a result of the wreck.

Two eyewitnesses to the accident testified at trial. Donna Williams ("Williams"), an Arkansas resident, testified that she was traveling westbound in the middle lane on the Hernando Desoto Bridge, in the same direction as the Lexus, at about 8:00 or 8:30 on the night in question. She said she was going about seventy (70) miles per hour. Williams said that a light colored car passed her on the left side going at "a very, very high rate of speed" and weaving in and out of cars. She said that another car was following the light-colored car, though "not nearly as fast," and the second car passed her on the right. When the light-colored car attempted to pass another car on the right shoulder, it hit the guard rail, flipped up into the air, and burst into flames. Williams saw two cars pull over on the shoulder to assist the occupants of the light-colored car. Williams then exited the bridge and called 911 for help.

Brandon Hill ("Hill"), an Arkansas resident, was traveling westbound in the right lane of the Hernando Desoto Bridge on the night in question. He said he was traveling about sixty or sixty-five miles per hour. Hill said that, when he was about halfway over the bridge, three cars passed him going very fast. He noticed that the first car was a white Lexus, the second was a dark-colored Caprice,[5] and the third was a Toyota Land Cruiser. Hill estimated that all three cars were going "[i]n excess of a hundred miles per hour," and said that they were only about two or three car lengths apart. Soon thereafter, Hill said, he saw sparks and thought that one of the cars might have hit the guard rail, but he did not know which one. Hill went directly to the home of his brother, who was a police officer in West Memphis, Arkansas. Hill's brother then called the highway patrol, and deputies came to the house to get a statement from Hill.

The parties stipulated to the results of toxology tests taken after the accident. The tests showed that Santres had a blood alcohol level of 0.19%, Larry had a blood alcohol level of 0.15%,

---

[4]Antonio said that he could not go out with them because he was under an 8:00 p.m. curfew as a condition of his release on bond resulting from a federal armed bank robbery charge.

[5]The driver of the Caprice was identified by Gilliam and Antonio as Little Willie McPherson, who was acquainted with LaShun. Though McPherson did not testify at trial, he told Gilliam that he witnessed the accident.

and LaShun registered negative for alcohol. At the time of the accident, a person with blood alcohol level of at least 0.10% was presumed to be impaired for purposes of Tennessee Code Annotated § 55-10-401(a)(1) (1998). *See* Tenn. Code Ann. § 55-10-408(a) (1998).[6] Therefore, it was stipulated that Santres was legally intoxicated by alcohol at the time of the accident.

Other witnesses testified on issues not pertinent to the issues in this appeal. In particular, both LaShun's mother, Gilliam, and Santres's mother, Mildred Butler, testified about the loss of their sons. At the close of proof, Gilliam moved for a directed verdict. The trial court denied the motion, concluding that the evidence was sufficient for the jury to decide whether LaShun acted reasonably in getting into the car with Santres when Santres was in an impaired condition.[7] The jury returned its verdict, concluding that Santres was 50% at fault for LaShun's death, and that LaShun was also 50% at fault. Accordingly, on April 16, 2003, the trial court entered judgment on the verdict in favor of the defendant.

On April 22, 2003, Gilliam filed a motion to set aside the jury verdict or for a new trial pursuant to Rule 59 of the Tennessee Rules of Civil Procedure, arguing that the jury's verdict was contrary to the law and not supported by the evidence submitted at trial.[8] On May 12, 2003, the trial court denied Gilliam's motion. From that order, Gilliam now appeals.

On appeal, Gilliam makes the same arguments made in her post-trial motion, that there is no material evidence to support the verdict in this case. She argues that, in order for the jury to find LaShun equally at fault with Santres, there must be evidence in the record to support a finding that LaShun knew or should have known that Santres was intoxicated. Because there is no such evidence, Gilliam argues, the trial court should have directed a verdict in her favor.

The trial court's decision to approve the jury's verdict must be reviewed under the "material evidence" standard of review. *See Henley v. Amacher*, No. M1999-02799-COA-R3-CV, 2002 WL 100402, at *9 (Tenn. Ct. App. Jan. 28, 2002); Tenn. R. App. P. 13(d). Under that standard, a

---

[6]That statute provided:

> (a) For the purpose of proving a violation of § 55-10-401(a)(1), evidence that there was, at the time alleged, ten-hundredths of one percent (.10%) or more by weight of alcohol in the defendant's blood shall create a presumption that the defendant's ability to drive was sufficiently impaired thereby to constitute a violation of § 55-10-401(a)(1).

Tenn. Code Ann. § 55-10-408(a) (1998). Pursuant to a 2002 amendment effective July 1, 2003, a blood level of 0.08%, rather than 0.10%, triggers the presumption that the ability to drive is impaired. Tenn. Code Ann. § 55-10-408 (Supp. 2003).

[7]The trial court also noted that the jury was entitled to decide who was driving the Lexus at the time of the accident. In this appeal, however, the parties do not take issue with the jury's finding that Santres was driving the car on the night in question.

[8]Actually, the plaintiff filed two motions, one for a new trial and one for a directed verdict and a new trial. The reason for this is unclear.

reviewing court must examine the entire record and determine whether it contains any material evidence to support the jury's verdict. **Henley**, 2002 WL 100402, at *9. A reviewing court may not reweigh the evidence or make credibility determinations, and it must construe the evidence in the light most favorable to the verdict. **Id.**; *see Foster v. Bue*, 749 S.W.2d 736, 741 (Tenn. 1988). An appellate court is not empowered to substitute its judgment for the jury's, even if it believes that the evidence supported a different result. **Henley**, 2002 WL 100402, at *10. The reviewing court may set the judgment aside only if the record contains no material evidence to support the verdict. **Id.** at *9. The jury's allocation of fault is like any other factual determination made by a jury, and it is likewise reviewed under the material evidence standard. **Id.** at *10. Therefore, we must examine the record to determine whether it contains any material evidence to support the finding that LaShun was 50% at fault for his own death.

In Tennessee, "[i]t is well-settled that passengers in motor vehicles have a duty to exercise reasonable or ordinary care for their own safety. This duty includes the duty to refrain from riding in an automobile operated by an intoxicated or reckless driver." **Biscan v. Brown**, M2001-02766-COA-R3-CV, 2003 WL 22955933, at *22 (Tenn Ct. App. Dec. 15, 2003) (citations omitted), ***perm. app. granted***, May 10, 2004. In **Biscan**, the court recognized that, prior to Tennessee's adoption of comparative fault in **McIntyre v. Balentine**, 833 S.W.2d 52 (Tenn. 1992), a passenger's choice to ride with an intoxicated driver precluded recovery on the basis of contributory negligence or implied assumption of the risk, because the passenger had failed to avoid a known risk. **Id.**; *see also Henley*, 2002 WL 100402, at *5 (noting that comparative fault principles "heralded the demise of both the doctrine of contributory negligence and the doctrine of implied assumption of the risk"). Under comparative fault principles, however, the failure to act reasonably in riding with an intoxicated driver does not automatically preclude the plaintiff from recovery. In such circumstances, the passenger's negligent conduct must be compared with the negligence of the intoxicated driver. **Biscan**, 2003 WL 22955933, at *22. The standard to be used is whether the passenger "knew or should have known of the driver's intoxication at the time the guest-passenger volunteered to ride in the automobile." **Id.** (quoting **Mansfield v. Colonial Freight Sys.**, 862 S.W.2d 527, 531 (Tenn. Ct. App. 1993) (quoting **Harvey v. Wheeler**, 423 S.W.2d 283, 285 (Tenn. Ct. App. 1967))). The passenger's reasonableness is to be judged by the trier of fact under an "ordinarily prudent person" standard. **Id.** Once it is determined that the plaintiff and the defendant were both negligent, the trier of fact must then allocate the percentage of fault. **Id.** at *23.

In the instant case, Gilliam does not dispute the instructions given to the jury on this issue. Rather, she argues that there was no material evidence submitted at trial to support the jury's finding that LaShun knew or should have known that Santres had been drinking or that he was intoxicated. Gilliam points out that LaShun was not present when Santres, Antonio, and Larry were at the BP gas station drinking the fifth of cognac. There is no evidence that LaShun saw the bottle, smelled Santres's breath, or had any other reason to believe that Santres had been drinking. Furthermore, there was no testimony indicating that Santres appeared intoxicated or showed signs that he had been drinking, to LaShun or anyone else, such that a reasonable person would have been put on notice. She cites **Edenton v. McKelvey**, 212 S.W.2d 616 (Tenn. 1948), in support of her argument that a

verdict should have been directed in her favor. Decided under pre-**McIntyre** standards, the Supreme Court in **Edenton** explained:

> Briefly, actually ascertainable intoxication is essential, and no contributory negligence in this connection can be asserted where, at the crucial time of undertaking or continuing the status of guest, the operator of the motor vehicle is not intoxicated to the knowledge of the guest, or to such extent that the latter is to be charged with knowledge; and, where at the inception of the journey and during its early progress, nothing in the driver's conduct betrays his being under the influence of liquor, the guest is not deemed at fault in intrusting himself in a vehicle under such driver's control. And where the guest has no opportunity to alight after discovering that the driver is intoxicated, he is not negligent.

**Edenton**, 212 S.W.2d at 617 (citation omitted). Gilliam insists that, in the case at bar, nothing in the evidence submitted at trial showed that Santres's conduct "betray[ed] his being under the influence of liquor." Therefore, LaShun cannot be "deemed at fault in intrusting himself in a vehicle under [Santres's] control." **Id.**

In response, the defendant asserts that all of the surrounding circumstances suggested that LaShun knew or should have known that Santres was intoxicated. The defendant claims that the pertinent question is "whether or not LaShun Hall had sufficient time in which to form an opinion as to Santres Johnson's condition, considering that he had a blood alcohol content reading of 0.19 immediately after the accident." In arguing against Gilliam's motion for a directed verdict, the defendant conceded that the evidence against LaShun was primarily circumstantial "because the plaintiff and defendant are both deceased." Thus, the material evidence on which the defendant relies consists of the stipulated fact that Santres had a blood alcohol reading of 0.19%, along with the amount of time that elapsed between LaShun's first contact with Santres after Santres had been drinking and the time of the accident. He argues that LaShun had adequate opportunity to ascertain that Santres was intoxicated, particularly in light of the fact that Santres's blood alcohol level was quite high, 0.19%.

It is helpful to examine other cases involving intoxicated drivers. In the recent case of **Lanier v. Bane**, No. M2000-03199-COA-R3-CV, 2004 WL 1268956 (Tenn. Ct. App. June 8, 2004), the plaintiff passenger sued the driver's estate for injuries sustained in a one-car collision which caused the driver's death. At the conclusion of the trial, the jury returned a verdict finding the driver 100% at fault for the accident, but found the plaintiff 50% at fault for his own injuries.[9] **Lanier**, 2004 WL 1268956, at *2. One of the issues on appeal was whether sufficient evidence was submitted at trial to show that the plaintiff passenger was aware of the intoxicated condition of the driver when he chose to ride in the automobile. **Id.** at *6. The appellate court concluded that the evidence submitted at trial to support that conclusion was "overwhelming." The evidence showed that the blood alcohol

---

[9]Much of the court's opinion analyzed the confusion caused by the questions regarding fault and negligence in the special jury verdict form.

level of the driver was 0.158% at the time of the accident. In addition to the results of the blood alcohol test, several witnesses testified that they saw the driver drinking heavily throughout the evening, and one testified that he was "pretty drunk." *Id.* at *7. Another witness testified that the driver had smoked two marijuana joints, and that someone else was driving him around earlier that night because he was intoxicated. After reviewing this evidence, the appellate court concluded that "the jury could certainly infer that what was obvious to everyone else would have to be obvious to [the plaintiff]." *Id.* Even more incriminating, however, was the plaintiff's own testimony that, when he got into the car, the driver was drinking a 40-ounce bottle of beer. *Id.* Under all of these circumstances, the appellate court found that the jury's allocation of 50% negligence to the plaintiff was supported by material evidence.

In other cases involving intoxicated drivers, jury verdicts adverse to the plaintiff passenger have been upheld where there was evidence that the passenger was aware that the driver had been drinking. *See Schwartz v. Johnson*, 280 S.W. 32, 33 (Tenn. 1926) (prior to comparative fault, holding that the plaintiff's decedent, the passenger, was contributorily negligent in drinking together with the driver, then allowing the intoxicated driver to drive around at a high rate of speed); *LaRue v. 1817 Lake Inc.*, 966 S.W.2d 423, 427 (Tenn. Ct. App. 1997) (holding that a jury question was presented as to the plaintiff-passenger's negligence when the plaintiff-passenger and the driver of the motorcycle had been drinking beer together before the accident). In these cases, the passenger's negligence precluded him from recovering for his injuries. Under principles of comparative fault, however, a passenger can be found to be less negligent than the driver, even if he was aware that the driver had been drinking when he got into the vehicle. In this situation, the passenger's negligence may reduce his recovery but does not bar it. *See Silcox v. Coffee*, No. 01A01-9304-CV-00166, 1993 WL 350134, at *5 (Tenn. Ct. App. Sept. 15, 1993) (approving jury verdict that the plaintiff passenger was 40% at fault with the driver, when evidence showed that the passenger and driver had been drinking together and were "staggering drunk"); *see also Harvey v. Wheeler*, 423 S.W.2d 283, 285-86 (Tenn. Ct. App. 1967) (prior to comparative fault, upholding jury verdict in favor of the plaintiff-passenger, even when passenger knew the driver had been drinking and was speeding; question is whether evidence is sufficient for reasonable minds to differ on the passenger's reasonableness). In all of those cases, however, evidence was presented at trial that the passenger had either been drinking with the driver, or that the passenger knew that the driver had been drinking when he got into the car with him.

A different result is mandated where there is no proof that the passenger knew or should have known that the driver was intoxicated. The case of *Parker v. McDaniel*, No. E2001-03110-COA-R3-CV, 2002 WL 31698661 (Tenn. Ct. App. Dec. 3, 2002), is particularly instructive. In *Parker*, two occupants in a car traveling at a high rate of speed collided with a car occupied by the two plaintiffs. The passenger in the speeding car was the owner of the vehicle. The occupants of the speeding car were intoxicated, and both died in the accident. The two plaintiffs in the other car sued their estates.[10] *Parker*, 2002 WL 31698661, at *1. The plaintiffs requested a jury instruction on

---

[10]The wife of one of the plaintiffs also asserted a claim for loss of consortium. *Parker*, 2002 WL 31698661, at *1.

negligent entrustment, asserting that the owner/passenger of the speeding car negligently entrusted the driver with driving in an intoxicated state. The trial court refused to give the requested instruction. *Id.* at *4. The jury returned a verdict in favor of the plaintiffs and against the driver of the speeding car, but not against the owner/passenger. In light of the jury verdict, the trial court dismissed the plaintiffs' claim against the owner/passenger of the speeding car. *Id.*

On appeal, the plaintiffs argued, among other things, that the trial court erred in failing to give the negligent entrustment charge to the jury and in dismissing the plaintiffs' claim against the owner/passenger. Under a theory of negligent entrustment, an owner of a vehicle can be held legally responsible for damages caused by someone he permits to drive his car if "[t]he owner knows, or from the facts known to the owner should know, that the user is under the influence of intoxicants or drugs . . . ." *Id.* at *6. In *Parker*, it was undisputed that the driver of the speeding car had a blood alcohol content of 0.16% after the accident. The appellate court held, however, that the trial court did not err in refusing to give the negligent entrustment instruction to the jury because there was "no proof whatsoever" that the owner/passenger of the car knew or should have known that the driver was intoxicated. The *Parker* court stated:

> There is no proof where or with whom [the driver] was drinking prior to the accident, if [the passenger-owner] even was aware he had been drinking, whether there were any visible effects on [the driver] of the alcohol consumption, etc. Likewise, there was no expert proof describing the visible effects a blood alcohol content of .16 would have had on [the driver] or any other individual.

*Id.* Thus, the *Parker* court held that, where the evidence showed only that the driver was intoxicated, that the driver had a blood alcohol level of 0.16%, and that the passenger was riding in the same car with the driver at a high rate of speed, this was insufficient evidence to support a finding that the passenger knew or should have known that the driver was intoxicated.

The instant case, of course, involves comparative fault between the plaintiff and the defendant, and *Parker* involved a claim of negligent entrustment. The issue to be decided, however, is the same: Was there material evidence submitted at trial to support a factual finding that the passenger knew or should have known that the driver of the car was intoxicated? First, we must note that there is no evidence that LaShun had *actual* knowledge that Santres had been drinking alcohol. It is undisputed that LaShun was not present at the gas station when Antonio and Santres drank the cognac. In addition, there is no evidence that, when LaShun came to the gas station to pick up Antonio, that LaShun got out of the Lexus or socialized with the group at the gas station. When LaShun arrived at the gas station, he moved over to allow Antonio to drive the Lexus, and Santres and Larry got into Santres's car. Thereafter, Antonio and LaShun followed Santres and Larry to Santres's house. At that point, LaShun got into the back seat of the Lexus, with Antonio at the wheel, to ride to Antonio's house to drop him off. Only at Antonio's house did LaShun end up in the Lexus with Santres driving, and there is no evidence that LaShun had any "opportunity to alight" after that point. *Edenton*, 212 S.W.2d at 617. With respect to whether LaShun *should have known* that Santres was intoxicated, the only evidence is the undisputed fact that Santres had a blood alcohol

level of 0.19% at the time of the accident.[11]  There was no proof that Santres showed any visible signs of being impaired, nor was there any expert proof describing the effects that such a blood alcohol level would have had on Santres or on any other person similarly situated.  Indeed, the only testimony elicited regarding Santres's behavior was Antonio's testimony that Santres did not appear impaired.  Defense counsel directly asked Antonio his impression of Santres's condition:

> [Question:] . . .  How did – when you gave Santres your car keys to your Lexus . . . what was his condition?  Did you have a feeling at the time that he might be under the influence of that cognac?
> [Antonio:] Well, I knew we had been drinking, but I was under the – I was under the impression that he was capable of handling his driving.

To be sure, the jury was entitled to discredit Antonio's testimony, who had been drinking with Santres but nevertheless gave him the keys to his car.  However, in this record, there is simply no material evidence to support a finding that LaShun knew or should have known that Santres was intoxicated. Thus, under these circumstances, we must set aside the judgment entered on the verdict and remand the cause for further proceedings.

We reverse the decision of the trial court and remand for further proceedings not inconsistent with this Opinion.  Costs on appeal are to be taxed to Appellee Michael G. Derrick, Administrator *Ad Litem* for the Estate of Santres A. Johnson, decedent.

HOLLY M. KIRBY, JUDGE

---

[11]When the two people involved in the accident are deceased, it is difficult but not impossible to prove that the passenger should have known that the driver was impaired.  The **Parker** court suggested that, where the two decedents of the speeding vehicle died in the accident the burden could be met, for example, through expert proof on the visible effects of a 0.19% alcohol blood level, through others' observations, or other such evidence. **Parker**, 2002 WL 31698661, at *6.